2012-1287

_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

D. KEITH HEFLIN,

Plaintiff-Appellant,

v.

COLEMAN MUSIC AND ENTERTAINMENT, LLC and
GARY B. COLEMAN, JR.,

Defendants-Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA IN CASE NO. CV-10-0566,
JUDGE ROBERT G. DOUMAR

_____

## BRIEF OF PLAINTIFF-APPELLANT D. KEITH HEFLIN

JOHN B. MUMFORD, JR.
HANCOCK, DANIEL, JOHNSON &
NAGLE, P.C.
4701 Cox Road, Suite 400
Glen Allen, VA 23060
(804) 967-9604

JOHN F. TRIGGS
MARK J. PATTERSON
PAUL NEY
WADDEY & PATTERSON, P.C.
1600 Division Street, Suite 500
Nashville TN 37203
 (615) 242-2400
*Attorneys for Plaintiff-Appellant,
D. Keith Heflin*

June 11, 2012

RECEIVED

Form 9

APR 1 1 2012

FORM 9.  Certificate of Interest

United States Court of Appeals
For The Federal Circuit

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

D. Keith Heflin _____ v. Coleman Music and Entertainment, LLC and Gary B. Coleman, Jr.

No. 2012-1287

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellant _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Dwayne Keith Heflin

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Same

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Waddey & Patterson, P.C., John F.Triggs, Mark J. Patterson, Paul C. Ney, Jr., Kathryn E. Kransdorf, James B. Mumford, Jr., Hancock,Daniel, Johnson & Nagle, P.C.

4/10/12
_____
Date

_____
Signature of counsel

_____
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

i

TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i
TABLE OF CONTENTS ........................................................................ ii
TABLE OF AUTHORITIES ................................................................... iii
STATEMENT OF RELATED CASES ................................................... iv
STATEMENT OF JURISDICTION ........................................................1
STATEMENT OF THE ISSUES .............................................................1
STATEMENT OF THE CASE .................................................................2
STATEMENT OF THE FACTS ...............................................................3
    A.   The Parties and Their Dispute.......................................................3
    B.   The Accused Machines. .................................................................3
    C.   The '874 Patent .............................................................................4
    D.   The '874 Patent Prosecution History .............................................6
    E.   The District Court's Construction of "Collector Card" ................8
    F.   The District Court's Summary Judgment Opinion and Order ....10
SUMMARY OF THE ARGUMENT .......................................................13
ARGUMENT      ..........................................................................................15
    I.     STANDARD OF REVIEW .......................................................15
    II.   THE DISTRICT COURT ERRED IN CONSTRUING
         THE CLAIM TERM "COLLECTOR CARD ...........................16
        A.   The District Court's *Markman* Opinion and Order................16
        B.   The District Court's Application of the Claim Construction...........20
        C.   Heflin Did Not Make a Clear and Unmistakable Disclaimer of
            Claim Scope ...........................................................................21
        D.   Heflin's Prosecution History Statements Were
            Subject to Multiple Reasonable Interpretations.................26
    III.  THE DISTRICT COURT ERRED IN GRANTING
         SUMMARY JUDGMENT OF NON-INFRINGEMENT .........30
        A.   The District Court Erred in Granting Summary Judgment
            Based on an Improper Construction of "Collector Card"................30
        B.   The District Court Erred in Granting Summary Judgment
            Because Disputed Issues of Material Fact Existed ...........................33
        C.   The District Court Erred in Granting Summary Judgment
            With Respect to Claims 1 Through 4 of the '874 Patent ...............35
CONCLUSION ....................................................................................40

# TABLE OF AUTHORITIES

## CASES

*American Piledriving Equipment, Inc. v. Geoquip, Inc.*,
  675 F.Supp.2d 605 (E.D. Va. 2009) ..........................................................18
*American Piledriving Equipment, Inc. v. Geoquip, Inc.*, 637 F.3d 1324 (Fed. Cir. 2011)............26
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................15, 33
*Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366 (Fed. Cir. 2008)..........................25
*Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc) ....................15
*Dorel Juvenile Group, Inc. v. Graco Children's Products, Inc.*, 429 F.3d 1043
  (Fed. Cir. 2005).....................................................................................34, 35
*Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1336 (Fed. Cir. 2007).................21
*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir.2004).........................................27
*Hap Corp. v. Heyman Mfg. Co.*, 311 F.2d 839 (1st Cir. 1962)...........................................37
*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*,
  49 F.3d 1551 (Fed. Cir. 1995)...................................................................13, 36, 37
*Intel Corp. v. U.S. Int'l Trade Commission*, 946 F.2d 821 (Fed. Cir. 1991) ...............................37
*N. Telecom Ltd. v. Samsung Electric Co.*, 215 F.3d 1281 (Fed. Cir. 2000) ...................................29
*Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ...............................26
*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................................18, 22, 30
*Plant Genetic System, N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335 (Fed. Cir. 2003)..............26
*Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.*, 438 F.3d 1123 (Fed. Cir. 2006)................13
*Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360 (Fed. Cir. 2003) .................................21
*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009)....................15
*SanDisk Corporation v. Memorex Products, Inc.*, 415 F.3d 1278 (Fed. Cir. 2005)..........25, 27, 29
*Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d 1570 (Fed. Cir. 1995) .............26
*SunRace Roots Enterprise Co., Ltd.  v. SRAM Corp.*, 336 F.3d 1298 (Fed. Cir. 2003) ...............21
*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)..........................................21
*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ...................................18, 39

## STATUTES AND RULES

28 U.S.C. § 1295(a) ...........................................................................................1
28 U.S.C. § 1331...............................................................................................1
28 U.S.C. § 1338(a) ...........................................................................................1
35 U.S.C § 271(a) ...........................................................................................39
Fed. R. App. P. 4(a) .........................................................................................1
Fed. R. Civ. P. 56(a) .......................................................................................15

## STATEMENT OF RELATED CASES

No other appeal in or from this action was previously before this Court or any other appellate court. Counsel knows of no other case in this Court or any other court that may directly affect, or be directly affected by, this Court's decision in this appeal.

## STATEMENT OF JURISDICTION

The United States District Court for the Eastern District of Virginia had jurisdiction over this patent infringement action giving rise to this appeal pursuant to 28 U.S.C. §§ 1331 and 1338(a). Pursuant to 28 U.S.C. § 1295(a), the U.S. Court of Appeals for the Federal Circuit has jurisdiction over this appeal from the district court's final judgment that Defendants-Appellees Coleman Music and Entertainment LLC ( "Coleman Music") and Gary R. Coleman ("Gary Coleman") did not infringe U.S. Patent No. 6,213,874 ("'874 Patent").

The district court entered a Final Judgment disposing of all parties' claims on December 8, 2011. On January 6, 2012, Plaintiff-Appellant D. Keith Heflin ("Heflin") timely filed the Notice of Appeal from the Final Judgment pursuant to Fed. R. App. P. 4(a).

## STATEMENT OF THE ISSUES

(1)     Whether the District court erred in its construction of the patent claim term "collector card"?

(2)     Whether the District Court erred in granting summary judgment of non-infringement as to:

      a.     Defendants-Appellees' machines?

      b.     The unlicensed use of Plaintiff-Appellants' machines?

## STATEMENT OF THE CASE

On November 18, 2010, Heflin initiated this patent infringement action in the U.S. District Court for the Eastern District of Virginia against Gary Coleman  and Coleman Music (hereinafter collectively referred to as "Coleman"). (A43). Heflin filed a second amended complaint alleging Coleman infringed the '874 Patent. (A53-58). Coleman answered the second amended complaint and asserted counterclaims against Heflin on January 21, 2011. (A44).

On January 21, 2011, Coleman filed a motion for summary judgment (A67-69), which was denied on May 18, 2011.  (A47).  On October 11, 2011, the district court conducted a claims construction hearing on the sole claim term that the parties agreed required construction, "collector card."  (A48). The district court issued its claim construction Opinion and Order on October 12, 2011 ("*Markman* Order"). (A21-29).

On October 25, 2011, Coleman filed a renewed motion for summary judgment (A49) and Heflin filed a four page motion for summary judgment on Coleman's counter-claims as directed by the district court during the Final Pretrial Conference. The district court issued an Opinion and Order on December 5, 2011 ("Summary Judgment Order"), granting both Heflin's Motion for Summary Judgment and Appellees' Motion for Summary Judgment. (A2-20). Final Judgment was entered on December 8, 2011. (A1).

On January 6, 2012, Heflin appealed to this Court the district court's decision granting Coleman's motion for summary judgment and, also, the district court's construction of the '874 Patent claim term "collector card." (A51).

# STATEMENT OF THE FACTS

## A.    The Parties and Their Dispute

In this case, Heflin seeks to enforce rights in his U.S. Patent No. 6,213,874 ("the '874 Patent"). (A30-37). The '874 Patent contains nine claims that protect systems and methods for dispensing a collector card/phone card with a promotional free spin/free game feature. Heflin was the sole inventor of these systems and methods. The innovation of the '874 Patent is the use of a promotional video game and the possibility of winning a prize to entice a patron to purchase something of value from a vending machine. That item of value is a "collector card." Each independent claim in the '874 Patent includes the term "collector cards." The parties agreed that for purposes of the proceeding before the district court that "collector card" was the only claim term in dispute as to its meaning. (A24).

Coleman distributed, sold, and licensed machines that Heflin alleges infringed the '874 Patent. (A774-75). Some of those machines were machines purchased by Coleman from a company controlled and principally owned by Heflin to which Heflin had licensed '874 Patent rights. Coleman distributed and operated those machines under a distribution agreement that had terminated. Heflin alleged that Coleman's distribution and operation of those machines outside the terms of the distribution agreement also infringed the '874 Patent. (A75)

On November 18, 2010, Heflin filed suit against Coleman Music  and Gary Coleman, alleging infringement of the '874 Patent. (A43).

## B.    The Accused Machines

Heflin alleged that three different types of machines distributed, sold, licensed and/or operated by Coleman infringed the '874. The Coleman Telephone Machines and the Coleman

3

Internet Machines (also collectively referred to as the "Coleman Machines") were similar in all respects except that the former dispensed a Prepaid Phone Card or "phone card" while the latter dispensed a card for prepaid internet service time. The Coleman Machines, in response to the receipt of currency, dispense printed paper telephone service receipts bearing a toll-free telephone number and a PIN (personal identification number) that entitles the card holder to a specified amount of long-distance telephone or internet service, along with other printed graphics and text. (A773-77).

The third type of machine was the FREESPIN® Machine ("FREESPIN® Machine") which dispensed pre-printed "Collector Series" prepaid telephone service cards.(A773-78). These machines were initially installed and operated by Coleman under a license and distribution agreement between Coleman and Worlds of Games, LLC, a company in which Heflin was the controlling principal. (A75). Coleman continued to operate the FREESPIN® Machines after the license had terminated, and was therefore infringing on the '874 Patent. Collectively, the Coleman Machines and the FREESPIN® Machines are the "Accused Machines."

All of the Accused Machines dispensed paper/cardboard items that contained information, including a telephone number and PIN number, by which a telephone call could be made or internet service could be used. (A773-78).

### C.    The '874 Patent

On September 9, 1997, Heflin filed Application Serial No. 08/925,860 with the United States Patent and Trademark Office ("PTO") for a "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature." (A30).

The Abstract of the Application described the invention as follows:

A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer. As a promotion to encourage the sales of the collector's cards, the system includes a game sub-system that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased. The purchaser may then save such credits or play them, and to the extent that a person wins, a promotional prize will be awarded. (A30).

On April 10, 2001, the PTO issued U.S. Patent No. 6, 213, 874 Bl ("the '874 Patent").

(A30). The '874 Patent contains two independent claims.

Independent claim 1 provides as follows:

1.    A system for dispensing collector cards to a user comprising:
    a.    a currency acceptor;
    b.    a card dispensing mechanism;
    c.    a processor operatively connected to the currency acceptor and to the card dispensing mechanism whereby a signal is sent to the card dispensing mechanism by the processor to dispense the collector cards in response to receipt of a pre-determined amount of currency at the currency acceptor;
    d.    a display and user control panel each operatively connected to the processor, and;
    e.    the processor including a promotional game subsystem, the game sub-system generating information at the display and receiving information from the user control panel whereby the user can play an electronic promotional game in response to and conditioned on the purchase of the collector cards.
    (A36 [col.4:39-4:57]).

Independent claim 5 sets forth the claim as a method rather than a system:

5.    A method of dispensing collector cards from a collector card dispensing system to a collector comprising the steps of:
    a.    accepting currency from the collector at an electromechanical currency acceptor associated with the system;

5

b.    processing in the system currency received signals from the currency acceptor;

c.    automatically dispensing the collector cards from a card dispensing mechanism associated with the system when the currency received signals processed reach a predetermined level;

d.    providing the collector an option to immediately play an electronic promotional game associated with the system as a reward for purchasing the collector cards.

(A37 [col 6:9-13]).


**D.    The '874 Patent Prosecution History**

On September 20, 1999, the PTO rejected all claims in the '874 Patent application (A148-51) under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 5,674, 128 ("Holch Patent") (A194-205) in view of U.S. Patent No. 5,868,236 ("Rademacher Patent"). (A207-215). The Examiner stated that "[i]t would be obvious to combine the inventions of Holch and Rademacher in order to have a game card vending station that produced collector cards with a monetary value that is able to be recognized by a gaming machine using a bar code, magnetic strip or PIN or other well known in the art card reading technology in order to play a promotional game." (A150).

In the Holch Patent, a player establishes an account at a customer service station and receives a magnetic I.D. card, for which he may select a PIN to use to access his account. The player deposits money into his account and can then swipe his card at a game terminal to play the desired game. Based on the results of the game, the player's account is credited and debited on his magnetic I.D. card. The player can obtain his or her winnings by presenting the card to the cashier. (A202 [col.5:43-8:6]). The Holch Patent disclosed a machine that had neither a currency acceptor nor a card dispenser. The Holch machine also did not offer the opportunity to play a promotional game in exchange for any purchase.

6

The Rademacher Patent covers a "station" consisting of a payment acceptor and a card dispenser for dispensing prepaid long distance telephone cards to the customer. Once the customer deposits his payment into the acceptor and selects the desired amount of long distance service, the station dispenses a telephone card and a separate slip with an activated PIN and the selected amount of long distance service printed on it. (A212 [col.2:33-64]). The Rademacher Patent machine did not disclose a game sub-system or offer the opportunity to play a promotional game in exchange for any purchase.

On June 24, 2000, Heflin submitted to the Examiner four arguments as to why his patent application should be granted in spite of the Holch and Rademacher Patents. (A156-60).The first and second arguments distinguished Heflin's invention from the Holch Patent on the basis that the Holch machines did not accept currency (A157) and, in Holch, the player places money on an account balance associated with the card. Heflin's third argument distinguished Heflin's invention from Rademacher on the basis that the Rademacher system did not dispense collector cards. Specifically, Heflin stated:

> In contrast to the present invention, Rademacher specifically describes that the preferred "cards are no-value cards" and that a label can be adhered to the no-value card. This use of an adhered label would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectible cards of the present invention. In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number that happens to be printed on the card for conevenience. Therefore, the Rademacher reference directly teaches away from the distribution of *collector cards and their inherent value as taught by the present invention*."(A158). (Emphasis added).

Heflin's final argument was that neither Holch nor Rademacher "suggests the combination of a card dispenser with a gaming device for collector cards." (A158). Heflin stated,

7

"[t]his directly *teaches away from the value of the collectable cards of the present invention* where the user is paying money for the value of the card being dispensed from the machine." Id. (Emphasis added). Heflin added "[t]herefore, both the Holch and Rademacher references directly teach away from the present invention involving the combination of *the collector card and its inherent value* in combination with a reward-for-purchase gaming system." (A.158) (Emphasis added). The inherent (*i.e.*, intrinsic) value fo the collector card was a central theme of Heflin's repsonse to the Examiner's rejection.

Based on Heflin's arguments, the Examiner issued a Notice of Allowability of all claims in the Application, without Heflin making any claim amendments. (A161). The Examiner stated in the notice, "[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." (A162).

### E.    The District Court's Construction of "Collector Card"

Coleman sought, through a premature summary judgment motion, to have the district court construe the term "collector card" to exclude items that have no intrinsic value. (A83). The district court declined to conduct an *ad hoc Markman* hearing, denied Coleman's summary judgment motion, and established a schedule for an orderly claims construction proceeding and determination. (A47).

The parties filed initial claim construction briefs on August 12, 2011. Heflin proposed that the term "collector card" means:

> a piece of paper, cardboard, plastic, or metal in a round, square, rctangular, or die cut shape, that contains information that would make it valuable or interesting to be acquired by a collector for study, comparison, exhibition, hobby, nostalgia, or investment. (A432).

8

This interpretation was supported by Michael Berkus, an expert with forty years of experience in the collectibles industry.

Coleman's proposed interpretation of "collector card" for the *Markman* hearing was more restrictive than and different from what Coleman had proposed in Coleman's first motion for summary judgment. Coleman now argued that Heflin's statements made in response to the Examiner's obviousness rejection constituted a disclaimer of claim scope that required the court to interpret the term to mean:

> a card that has recognized value as a collectable item at the time of purchase, and *excluding a card that has some other associated value* (not as a collectable item) that is accessible by a PIN number printed on the card. (A466). (Emphasis added).

Coleman was now arguing that any card that derived *any* value from an external source could not be a collector card. Previously, Coleman had argued for an interpretation that excluded cards that derived value from an external source only if they had no intrinsic value for entertainment or collectible purposes. (A83).

Following the *Markman* hearing, the district court entered an Opinion and Order dated October 12, 2011 ("*Markman* Order"). (A21-29). The district court landed somewhere between the constructions porposed by Heflin and Coleman, and ruled that "the term 'collector card' refers to a card which, at the time it is dispensed, has some intrinsic value as a card to the purchaser as a collector of that type of card or that type of picture or text which appears on the face of that card." (A29). In its analysis section of the *Markman* Order the district court also stated that a "collector card" must be interpreted as "excluding coverage of cards that have no intrinsic value or which receive their value from some external source, such as an account linked to the card by a pin number." (A28).

9

**F.      The District Court's Summary Judgment Opinion and Order**

Coleman filed a second motion for summary judgment of non-infringement on October 25, 2011. In it Coleman alleged that, based on this district court's construction of the term "collector card," "none of the machines accused of infringement in this case can infringe [the '874 Patent] as a matter of law." (A710-12). Because the district court at the November 7, 2011, Final Pretrial Conference had directed Heflin to file within seven days a motion for summary judgment no longer than  four pages on Coleman's counterclaims, Heflin filed a motion for summary judgment on November 11, 2011. (A50).

Coleman's statement of undisputed material facts supporting the motion for summary judgment  included the following:

> 9. Assuming solely for the purpose of this motion that the paper telephone service receipt dispensed by the Accused Telephone Machine is a "card," such receipt is a "card" that receieves value from an external source, such as an account linked to the card by a PIN number.

> 10. The receipts dispensed by the Accused Telephone Machine are not "collector cards" as that term has been interpreted by the Court.

> 12. Because the receipt dispensed by the Accused Telephone Machine is not a "collector card," the Accused Telephone Machine distributed, licensed, sold and/or operated by Defendants do not infringe any claims of the '874 Patent.

> 18. Assuming solely for the purpose of this motion that the paper telephone service receipt dispensed by the Accused Internet Machines is a "card," such receipt is a "card" that receives value from an external source, such as an account linked to the card by a PIN number.

> 19. The receipts dispensed by the Accused Internet Machine are not "collector cards" as that term has been interpreted by the Court.

10

21. Because the receipt dispensd by the Accused Internet Machine is not a "collector card," the Accused Internet Machine distributed, licensed, sold and/or operated by Defendants do not infringe any claims of the '874 Patent.

28. The FreeSpin [sic] PrePaid Phone Card is a card that receieves value from an external source, such as an account linked to the card by a PIN number.

29. The FreeSpin [sic] PrePaid Telephone Card is not a "collector card" as that term has been interpreted by the Court.

31. Because the FreeSpin [sic] machine does not dispense a "collector card." the       FreeSpin [sic] machines distributed and/or operated by Defendants do not infringe any claims of the '874 Patent.

(Citations to the district court record omitted) (A773-78).

Coleman's summary judgment brief disregarded the explicit definition of the term "collector card" in the district court's *Markman* Order (A29) and implicitly argued that the district court's construction of the term *per se* excluded any card that received value from an external source, such as the prepaid telephone and internet cards dispensed by the Accused Machines. Coleman argued that even Heflin's FREESPIN® Machines previously licensed to Coleman did not practice the '874 Patent. (A781-82). Coleman did not bother to assert or proffer evidence that it was an undisputed fact that the cards dispensed by the Accused Machines did not also have extrinsic value to a purchaser as a collector. (A773-78).

Heflin opposed Coleman's motion for summary judgment by disagreeing with Coleman's understanding of the district court's interpretation of the term "collector card." (A835-37). Heflin argued that under the proper interpretation of the court's definition of that term, the cards dispensed by the Accused Machines, although they were prepaid telephone or internet cards, could also have intrinsic value that would make them "collector cards" as defined by the district court.  Whether that was the case, Heflin argued, was a fact question that precluded summary

11

judgment of non-infringement. Heflin also pointed out that claims 1 through 4 of the '874 Patent were system claims that required only that the Accused Machines be *capable* of dispensing "collector cards."  Heflin argued that the question of whether the Accused Machines were capable of dispensing "collector cards," as distinguished from actually having dispensed "collector cards," remained a disputed issue for the trier of fact to determine. (A841-43).

On December 5, 2011, the district court entered an Order and Opinion on the parties' summary judgment motions. (A2-20). Seven and a half pages of the district court's Summary Judgment Order addressed Heflin's four-page motion for summary judgment. (A50).The district court granted Heflin's motion. The district court also granted Coleman's motion for summary judgment, thus dismissing all claims by all parties before the district court. (A1 and A2-20).

In the Summary Judgment Order the district court recounted the prosecution history of the '874 Patent and passages from its *Markman* Order, including the definition of the term "collector card":

> we find that the term "collector card" refers to a card which, at the time it is dispensed, *has some value* as a card to the purchaser as a collector of that type of card or that type of     picture which appears on the face of that card.   (A6). (Emphasis added).

The district court's analysis section of its opinion concerning Coleman's motion (A7) did not mention this, its own  explicit definition of "collector card.". Instead, the district court quoted other passages from the *Markman* Order leading to its finding that "as a matter of law, none of the cards dispensed by the Accused Devices is a "collector card." within the meaning of that term as construed by this Court." (A12). The Summary Judgment Order never addressed whether the cards dispensed by the Accused Machines had any intrinsic value.

Finally, the district court, rejected Heflin's argument that claims 1-4 of the '874 Patent required only that the Accused Machines be capable of dispensing a "collector card." In doing so, the district court principally relied upon a prosecution history disclaimer analysis to limit the scope of the system claims (A10-12). The district court also relied on *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551 (Fed. Cir. 1995), in which this Court found that a device did not infringe simply because it could be physically altered in a way that would satisfy a patent's claim limitations. (A10).

## SUMMARY OF THE ARGUMENT

The district court committed at least one of two errors that require the reversal of the summary judgment of non-infringement. The first error is a misapplication of the law of claim construction and prosecution history disclaimer to construe "collector card" to *per se* exclude any card dispensed by an Accused Machine that received some value from an external source, irrespective of whether it also had intrinsic value to a purchaser as a collector. The second error is usurping the role of the trier of fact and implicitly finding that cards dispensed by the Accused Machines lacked that intrinsic value. It is unclear from the Summary Judgment Order which of these errors caused the court to grant Coleman's summary judgment of non-infringement. Either error, however, compels the reversal of that judgment. The district court also erred in finding that claims 1 through 4 of the '874 Patent require that the Accused Machines actually dispense "collector cards" to infringe the patent.

Claim terms must be given their ordinary meaning to one of ordinary skill in the art. Only clear and unmistakable disavowals made during prosecution can be used to limit the scope of a patent claim. *Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.,* 438 F.3d 1123, 1136

13

(Fed. Cir. 2006). Where the statements made by the patentee are reasonably susceptible to more than one interpretation, there can be no prosecution history disclaimer.

Heflin's statements in response to the Examiner's obviousness rejection were not clear and unmistakable disavowals of the scope of "collector card." The two different and inconsistent claim constructions for "collector card" offered in good faith by Coleman during the course of this litigation further demonstrate that Heflin's statements during prosecution were reasonably susceptible to multiple interpretations. The district court should not have relied upon prosecution history disclaimer to *per se* exclude as a "collector card" any card that received some value from an external source. Had the court not applied such an unduly narrow meaning to the term "collector card," the existing disputed issues of material fact, including the question of whether the cards dispensed by the Accused Machines have intrinsic value to a purchaser as a collector, clearly made summary judgment of non-infringement inappropriate.

If the district court did not actually apply such a restrictive interpretation to "collector card" it still clearly erred by granting summary judgment. In that instance, the court could only have granted summary judgment of non-infringement by invading the province of the trier of fact and determining that the cards dispensed by the Accused Machines had no intrinsic value to a purchaser as a collector.  Coleman did not assert and offered no evidence that there was no dispute as to whether those cards had such intrinsic value in addition to the value it received from an external source. That remained a disputed fact issue on which Heflin was entitled to offer evidence, including the testimony of one of ordinary skill in the collector card industry, to the trier of fact. It is not the role of the district court to make a finding of fact that those cards had no intrinsic value.

14

The district court further improperly read a limitation into the system claims of the '874 Patent, claims 1 through 4. The law does not require that "collector cards" actually be dispensed by the Accused Machines for the sale or manufacture of the machines to infringe those system claims. The machines need only be capable of dispensing "collector cards." The district court, however, disregarded the claim limitations, misapplied the law, and disregarded issues of disputed material fact to deny Heflin the right to have the trier of fact determine whether the Accused Machines were capable of dispensing "collector cards," and, therefore, infringed his patent.

## ARGUMENT

### I.      STANDARD OF REVIEW

The construction of a patent claim term is a question of law to be decided by the court, and this Court reviews claim constructions *de novo*. *Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc). This Court also reviews the district court's grant of summary judgment *de novo. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 563 F.3d 1358, 1365 (Fed. Cir. 2009). Summary judgment is proper only "if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

## II.    THE DISTRICT COURT ERRED IN CONSTRUING THE CLAIM TERM "COLLECTOR CARD"

### A.    The District Court's *Markman* Opinion and Order

In granting Coleman summary judgment of non-infringement, the district court addressed the Coleman Machines and the FREESPIN® Machines separately. The district court found that because the Coleman Machines "dispense paper receipts containing information, including a PIN number that the purchaser can use to make a phone call or connect to the Internet" the cards dispensed by the Coleman Machines are not "collector cards" "within the meaning of that term as construed by this Court." (A9). The district court found that because  the FREESPIN® Machines "dispense phone cards that "contain a telephone number, PIN number, and information about  the amount of telephone time purchased" the cards dispensed by the FREESPIN® Machines are not "collector cards" "within the meaning of that term as construed by this Court." (A9). The district court then granted summary judgment on the basis that none of the Accused Machines dispensed a "collector card." (A12).

These foundational findings by the district court necessarily reflect at least one of two possible errors made by the district court in granting summary judgment of non-infringement. Either the district court erred by construing the term "collector card" to *per se* exclude prepaid telephone or internet service cards (*i.e.,* cards containing information, including a PIN number, that can be used to make telephone calls or connect to the Internet, hereinafter also referred to as "PIN cards" ), or the district court made the factual determination that the particular PIN cards dispensed by the Accused Machines did not have any intrinsic value (or, obversely, received their value *solely* from some external source, such as an account linked to the card by a PIN number).

16

The former error stems from an unwarranted application of a purported prosecution history disclaimer which resulted in the districts court's construction of the claim term "collector card" to exclude in all instances PIN cards, whether or not those cards had any intrinsic value in addition to the value they receive from some external source. The latter error represents a usurpation by the district court of the role of the trier of fact to apply the claim construction of "collector card" to the facts and determine, among other disputed fact issues, whether the cards dispensed by the Accused Machines either had intrinsic value or received their value solely from an external source. The district court did not explain which of the two errors it was making, but either mandates the reversal of the summary judgment of non-infringement.

On its face, the district court's definition of the term "collector card" does not betray the district court's erroneous application of prosecution history disclaimer to the construction of that claim. The *Markman* Order concludes:

> [W]e find that the term "collector card" refers to a card which, at the time is dispensed, *has some intrinsic value* as a card to a purchaser as a collector of that type of card or that type of picture or text which appears on the face of that card. (A29). (Emphasis supplied).

Inherent in the Court's definition of "collector card" is the concept that a card can be a "collector card" if it meets the Court's definition, *and* may also derive additional value from some external source, such as an account linked to the card by a PIN number. Nothing in the court's explicit construction limits a "collector card" to cards whose value is exclusively attributable to "some intrinsic value as a card to the purchaser as a collector of that type of card or that type of picture or text that appears on the face of the card."

17

In arriving at this construction of the term "collector card" the district court had reviewed the intrinsic record of the '874 Patent, including the claims, specification, and prosecution history. The claim language did not provide an express definition of the term "collector card," and "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005), *cert. denied*, 126 S.Ct. 1332 (2006) (*quoting Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996)). Because "[t]he inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation," *id.*, the district court also reviewed, to some extent, the evidence proffered by Heflin of how a person of ordinary skill in the art would read the claim term in the context of the entire patent, which informed the claim term construction proposed by Heflin. (A29). *See American Piledriving Equipment, Inc. v. Geoquip, Inc.,* 675 F.Supp.2d 605, 609 (E.D.Va. 2009) (a court may use extrinsic evidence to educate itself about the field of invention and determine how a person of ordinary skill in the art would understand the claim terms).

The district court, however, rejected some and apparently disregarded most of the information and insight provided by Heflin's witness, Mr. Berkus, who offered a perspective on the claim construction issue at hand based on his actual knowledge of and experience in the collector card industry. (A299-313).

Coleman offered no perspective from a person of ordinary skill in the art in support of their proposed claim construction. Instead, Coleman advanced a proposed claim construction principally based on a strained characterization of Heflin's response to the Examiner in the sole Office Action in the '874 Patent prosecution that, Coleman argued, justified the limitation of the scope of the term "collector card."

18

Before defining "collector card" in the *Markman* Order, the district court explained its reasoning and made some additional observations concerning the term. None of that analysis appeared inconsistent with the district court's actual definition of the term, though it was evident that the court may have been influenced by Coleman's erroneous prosecution history disclaimer argument. The district court observed, for instance, that "the '874 Patent must be construed as excluding coverage of cards that have no intrinsic value or which receive their value from some external source, such as an account linked to the card by a PIN number." (A28).

The first element of that statement of exclusion from the scope of the meaning of "collector card" was unremarkable and fully incorporated into the court's definition of the claim term. It reflected Heflin's central and, indeed only, point relating to "collector cards" made to the Examiner about the meaning of the term "collector card" in his response to the Office Action: the collector cards of Heflin's invention have intrinsic (or inherent) value, but, because the Rademacher Patent explicitly discloses cards that have no value, it cannot be a disclosure of the collector card element of Heflin's invention. To the extent that the district court's claim construction was informed by this point made by Heflin, it was not an inappropriate use of the prosecution history to inform the district court's claim construction, but it was also not the application of prosecution history disclaimer.

The evidence that the district court might have been looking down the prosecution history disclaimer path is the district court's reference in its analysis to cards "which receive their value from some external source, such as an account linked to the card by a PIN number." (A28). The reference to an account and a card with a PIN number was drawn from the Rademacher Patent, but it was superfluous in light of the meaning of "collector card" issued by the district court in its *Markman* Order. Rather than being an additional limitation on the claim term's meaning, the PIN

19

card passage in the court's analysis appeared to be, in light of the court's stated definition of the term, simply a restatement of the intrinsic value requirement in the obverse.

In the context of the court's actual construction of the term, which defined a "collector card" as having "some intrinsic value," that passage in the *Markman* Order referred to cards whose *only* value was received from some external source. If that were not the case, the court's definition of the term should have made it clear that a "collector card" could have *only* that intrinsic value to a purchaser as a collector and could have no other associated value, whether received from an external source or otherwise. The district court, during the *Markman* hearing, appeared to acknowledge this when it commented directly on this issue at the conclusion of the argument by counsel: "A collector card is a card that has some intrinsic value *besides that which is printed on it* by virtue of a desire by the public to want to accumulate cards." (A831, lines 20-22). (Emphasis added).

### B.     The District Court's Application of the Claim Construction

Coleman filed the renewed motion for summary judgment essentially arguing that any card that receives any value from an external source, such as a prepaid telephone card or PIN card, could not be a "collector card" as that term had been construed by the district court. Heflin contested Coleman's understanding of the claim construction. Heflin's response was principally premised on the argument that Coleman mischaracterized the district court's claim construction. Heflin argued that the district court's construction of the term left it to the trier of fact to determine whether the cards dispensed by the Accused Machines, despite having value received from an external source, also had the requisite intrinsic value to a purchaser as a collector.

20

Heflin's response further identified specific material issues of disputed fact that existed and, therefore, precluded summary judgment of non-infringement.

If the district court's granting Coleman summary judgment of non-infringement was premised on the court's applying a claim term construction to "collector card" such that no card that receives any of its value from an external source (and, therefore, no prepaid telephone card) could be a "collector card", the district court erred in its ultimate construction of the term by inappropriately limiting the scope of the term by prosecution history disclaimer.

### C.    Heflin Did Not Make a Clear and Unmistakable Disclaimer of Claim Scope

Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear and unmistakable disavowal of claim scope. *SunRace Roots Enterprise Co. Ltd.  v. SRAM  Corp.*, 336 F.3d 1298, 1302 (Fed. Cir. 2003) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

There is a heavy presumption that the claim term "collector card" should be given the ordinary meaning that would be attributed to it by those skilled in the art. *See Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) *and  Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003).   To overcome this presumption, Coleman must demonstrate that Heflin intended to deviate from the ordinary and accustomed meaning of "collector card" by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope. *SunRace,* 336 F.3d at 1302. "[B]ecause the prosecution history

21

represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips,* 415 F.3d at 1317.

Heflin did not make a clear and unmistakable disavowal of the scope of the term "collector card" to exclude from the meaning of the term any item that received any of its value from an external source, whether linked to an account by a PIN number or otherwise. The Examiner initially rejected the claims as obvious over the combined teachings of the Holch and Rademacher Patents. Heflin disputed the Examiner's proposed combination of the Holch and Rademacher Patents because: 1) those patents disclosed, by their own characterization, "no-value cards," 2) those patents did not together or alone disclose all of the features of Heflin's invention, most notably a promotional game, and 3) there was no suggestion to combine the teachings of those two patents. Thus, Heflin explained to the Examiner, it would be legal error to combine the two references in a hindsight attempt to create Mr. Heflin's invention. (A156-60).

The language cited by the district court from Heflin's response to the Office Action ("Response")  does not support the wholesale exclusion of "paper receipts" or cards "which receive their value from some external source, such as an account linked to the card by a PIN number"  from  "collector cards."

The  Rademacher Patent disclosed a card Rademacher called a "no value card', which is a card that, by itself, would have no value to the purchaser. Rademacher did not explain what that card was or could be, except that his 'no-value card" did not display a PIN number necessary to activate the prepaid telephone service account that was purchased. Rademacher also disclosed a card with a PIN number on the card, but , even still, that card's value to the purchaser was the prepaid telephone that the PIN number activated. Moreover, placing a PIN number sticker on the

card, as Rademacher taught, defaced the card and diminished its value to a collector. In the Rademacher Patent, the prepaid telephone service was the only object of the purchase. The cards were the medium by which the information necessary to activate the service purchased was conveyed to the purchaser. The card, though an element of the Rademacher system, was incidental to the purchaser.

In Heflin's invention the card is an object of the purchase. Unlike the cards in both the Rademacher and Holch Patents, the cards in Heflin's invention have value, separate from the value of an associated account. The promotional game element of Heflin's invention rewards the purchaser of the card and entices the purchaser to buy the card. Rademacher is clear that the card in his invention was merely a means of conveying the account information by identifying the "no value card." (A156-60).

In the Response Heflin focused on what Rademacher himself did not teach or recognize about the collectible value of cards that could be dispensed from a machine that also incorporated a promotional game. Thus, Heflin quoted Rademacher's statement that the preferred cards dispensed by his machine were "no-value cards." In short, Heflin responded to the Rademacher Patent's very precise description of Rademacher's "no-value cards" as used in the context of that patent. (A158).  Heflin argued that because Rademacher himself adopted a "no value card" position, it would be improper for the Examiner to combine the teachings of Rademacher and Holch in a hindsight attempt to arrive at Heflin's novel invention.

Heflin's explanation to the Examiner was clearly intended to address the different roles that the cards played in the respective inventions. In the Rademacher Patent the card was incidental to the sale of the prepaid telephone service. In the Heflin invention, the sale of the card was central to the purpose of the invention. Thus, the Rademacher Patent not only did not teach

that element of Heflin's invention, but, by expressly identifying the card as having "no value," taught away from Heflin's concept of a machine that sold cards that had a value to the purchaser other than being associated with an account such as a prepaid telephone service (*i.e.*, an intrinsic value). This is what Heflin explained in his Response.  Whether Heflin agreed or disagreed that a card dispensed by the Rademacher machine could possess intrinsic value, perhaps as a collectible, was not a debate in which Heflin had to engage because the Rademacher Patent defined the issue by positing a hypothetical card that had no value other than the associated account.

Heflin never asserted that a card that had some value derived from an associated account, in addition to the intrinsic value of a collector card, was not a collector card because of that additional element of value. Heflin did not argue that any particular type of card was not a "collector card." Heflin did not need make that assertion to successfully oppose the obviousness rejection. Because he neither asserted that position directly or inherently, he did not clearly and unmistakably disavow all prepaid telephone cards as "collector cards", nor did he limit the scope of the claim term "collector card" such that any card deriving some value from an external source such as an associated account was not, per se, a "collector card."

Heflin believed that the Examiner's rejection was based on a misapprehension of his invention. Heflin also believed that there was a lack of motivation to combine Rademacher and Holch to use a video game to promote the sale of collector cards. Mr. Heflin did not amend any claims and he did  not surrender or disavow any claim scope or coverage during prosecution of his patent application. After Heflin responded to the rejections, the Examiner agreed with Mr. Heflin, withdrew the rejections, and approved all of Heflin's claims. (A161-62). The '874 Patent claims were issued as filed.

In *SanDisk Corporation v. Memorex Products, Inc.*, 415 F.3d 1278 (Fed. Cir. 2005), this Court disagreed with the district court's claim construction and finding of a prosecution claim disclaimer and reversed a summary judgment of non-infringement. The Court concluded that the patentee's statements in the prosecution history describing partitioning requirements of the patented memory system did not exclude the possibility that other, non-patented, memory may exist in the same system. *SanDisk,* 415 F.3d at 1290. Likewise, Heflin's statements did not exclude the possibility that a card that derived value from an external source could not also be a card that had the requisite intrinsic value to make it a "collector card."

The cases cited by the district court in both its *Markman* and Summary Judgment Orders illustrate why Heflin's statements to the Examiner did not amount to a clear and unmistakable disclaimer of the scope of the claim term. In *Computer Docking Station Corporation v. Dell, Inc.,* 519 F.3d 1366 (Fed. Cir. 2008)*,* the patentee distinguished prior art by stating that the claimed invention did not require "a built-in display or keyboard (such as a laptop would have)." *Id.* at 1376. When the patentee in *Computer Docking* argued that the statement did not exclude a laptop from the term meaning, this Court disagreed because a computer cannot both have and not have a portable display and keyboard. *Id.* at 1379. The difference between the patentee's two propositions was stark and direct, making the prosecution history disclaimer clear and unmistakable.

Heflin's statements to the Examiner in this case are unlike the statements made by the applicant in *Computer Docking*. While a card could not be both a no-value card (*i.e.,* deriving its value *solely* from the associated PIN account) and a collector card with intrinsic value (*i.e.,* value not related to the PIN account), a card could have intrinsic value as a collectible and *also* have value associated with a PIN account. *See also Plant Genetics Systems v. DeKalb Genetics Corp*,

25

315 F.3d 1335 (Fed.Cir. 2003) (when a limiting statement made to the Examiner excludes plants susceptible to infection and transformation, monocots, which were not susceptible to transformation, were disclaimed) *and Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d 1298 (Fed. Cir. 1995) (the court found that claim term could not include a two-step process when applicant explained to Examiner that its amendment in response to an obviousness rejection referred to a "one-step process").

Similarly, in *American Piledriving Equipment, Inc. v. Geoquip, Inc.,* 637 F.3d 1324, 1335-37 (Fed. Cir. 2011), this Court affirmed the districts court's finding that the patentee's explicit definition of the term "integral" as "one-piece" during the prosecution foreclosed the patentee's proposed construction of that term to mean "composed of portions, parts, or pieces" (*i.e.*, more than one piece). Heflin, however, did not explicitly define "collector card" in response the Examiner's rejection, nor did he explicitly exclude any card that received any value from an external source such as an account linked to the card by a PIN number.

### D. Heflin's Prosecution History Statements Were Subject to Multiple Reasonable Interpretations

The district court's reliance upon prosecution history disclaimer was also inappropriate because Heflin's statements to the Examiner are reasonably susceptible to multiple interpretations. As such, any alleged disclaimer was ambiguous. An ambiguous disclaimer does not advance the patent's notice function or justify public reliance, and the court should not use it to limit a claim term's ordinary meaning. *Omega Engineering, Inc. v. Raytek Corp.,* 334 F3d 1314, 1324 (Fed.Cir. 2003). There is no clear and unmistakable disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term. *See Golight, Inc v. Wal-Mart Stores, Inc.,* 355 F.3d

26

1327, 1332 (Fed. Cir. 2004) *and SanDisk Corp. v. Memorex Products, Inc.,* 415 F.3d 1278, 1287 (Fed. Cir. 2005).

Here, the district court's explicit construction and Coleman's two disparate proposed constructions provide proof of the ambiguity of the alleged disclaimer upon which the district court relied in unduly narrowing the meaning of the term "collector card."

When Coleman first moved for summary judgment of non-infringement, Coleman characterized an element of the scope of the term "collector card" correctly. In oral argument at the hearing on Coleman's initial summary judgment motion, Coleman's counsel discussed the issue with the district court:

> THE COURT: So what you're saying is that portion of it, the second portion of it, specifically exempts telephone cards.

> MR. LISCHER: Correct, cards with PINs on them or passwords *that don't have any value other than the value of the services that you can access through the password.* (A380, lines 2-7). (Emphasis added).

Speaking about the hypothetical purchaser in the Rademacher Patent and distinguishing Rademacher's "no-value" card, Coleman's counsel added:

> MR. LISCHER: He's paying for the service. He's paying for the service. In the Rademacher patent and in the file history the "no-value" refers to the inherent value of the card standing alone. The value of the card is not in its inherent value, it's in the service. (A409, lines 9-13).

Coleman's counsel then notes that when the Examiner said that the Rademacher Patent teaches, among other things, "a dispenser that dispenses collector cards…" Heflin refuted this asserted disclosure by reference to Rademacher's own language that made clear that a "no-value" card had no value other than that associated with the use of the PIN dispensed by the Rademacher machine on a separate piece of paper:

27

MR. LISCHER: …Mr. Heflin comes back and says, "No, that's not right. Rademacher doesn't dispense collector cards, it dispenses no-value PIN cards," no-value in terms that they have no inherent value as the card themselves. They do have value, of course, as to the services they represent.(A418, lines 12-17).

In the context of the Rademacher Patent, the term "no-value" did not speak to whether any such cards dispensed by that machine are "collector cards" as used by the '874 Patent. Under this interpretation proposed by Coleman, a card that had value from an external source (*e.g.*, a prepaid telephone card) could also have been a "collector card."

Coleman subsequently proposed a different, more restrictive reading of Heflin's very same statements to the Examiner, without any additional facts or information to inform their reconstructed, broadened scope of Heflin's alleged disclaimer. In the *Markman* hearing, Coleman's counsel argued as follows:

MS. BORLAND: Well, our position is that Mr. Heflin disclaimed either, because he said that a card that has a PIN number on it -- a card that has value because it's associated with an account that's accessed by PIN number is not a collector card. (A822, lines 11-15).

MS. BORLAND: So they said, "Our patent is on the value of the card as a collectible, it's not on a card that has *some other value* that's accessed by PIN number." (Emphasis added). (A827, lines 4-15).

MS. BORLAND: Right, but this goes to the question of what kind of value were they talking about. So Heflin is talking about whether it has value as a collectible, *but what he says is if it has some other kind of value then it's not a collector card*. (A826, lines 17-21). (Emphasis added).

Consistent with this revised interpretation of Heflins' statements to the Examiner, Coleman proposed in its claim construction brief that "collector card" should be construed to exclude any card with a PIN number irrespective of whether it had some value in addition to that which the PIN number and associated account imparted to it. (A772).

28

Thus, Coleman's second proposed construction, unlike Coleman's first proposed construction, would have excluded both cards that had value only because of the associated account  or external source (*i.e.,* Rademacher's "no-value cards") and cards that had other intrinsic value (*i.e.*, value as a collectible) as well as value associated with an account linked to the card by a PIN number or some other external source.

That Coleman offered these inconsistent term constructions based on the same statements made by Heflin in the prosecution history demonstrates that Heflin's statements were not a clear and unmistakable disavowal of the scope of "collector card." Heflin's response to the Examiner was, at most, ambiguous and reasonably susceptible to multiple interpretations. This leads to the inescapable conclusion that the district court should not have relied upon prosecution history disclaimer to limit the scope of "collector card." The district court's construction of the term was unduly narrowed by applying a prosecution history disclaimer in the summary judgment proceedings to exclude  the cards dispensed by the Accused Machines because they contained "a telephone number, PIN number, an information about the telephone [sic] time purchased." *See N. Telecom Ltd. v. Samsung Electric Co.*, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000) (because inventor's statements were amenable to multiple reasonable interpretations, prosecution disclaimer did not support the narrowing of a claim term) *and* (*Sandisk Corporation v. Memorex Products, Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005).

Left without a clear and unmistakable disavowal of PIN cards and prepaid telephone service cards as "collector cards," and no explicit definition of the term found in intrinsic evidence, the ordinary and customary meaning of the term to one of ordinary skill in the art should guide the court's construction of the claim term. *Phillips,* 415 F.3d at 1324. Heflin submitted for that purpose the Declaration of Michael A. Berkus. (A299-313). Mr. Berkus has

over forty years of experience in the collector card industry and is qualified to directly speak to what "collector card" as used in the '874 Patent means to him and to others in his field. *Id.*

In view of the district court's apparently erroneous reliance on prosecution history disclaimer this Court should, at least, find that the meaning of the term is that which the district court originally stated in its *Markman* Order and further make clear that such a card may be a "collector card" if it also has intrinsic value to a purchaser as a collector of that type of card.

## III.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT OF NON-INFRINGEMENT

### A.    The District Court Erred in Granting Summary Judgment Based on an Improper Construction of  "Collector Card"

Because the district court apparently applied an erroneous and unduly narrow meaning to the claim term "collector card," it also erroneously granted Coleman summary judgment of non-infringement. The district court, in granting summary judgment of non-infringement, referred not to its definition of the claim term issued in its *Markman* Order but to an excerpt from the opinion section of its *Markman* Order:

> In our October 12, 2011 Order, we expressly held that the '874 Patent did not cover cards that have "no intrinsic value" and "which receive their value from some external source, such as an account linked to the card by a PIN number." (A9).

The district court then identified the characteristics of the Accused Machines, noting that they each dispensed a card or paper receipt that included a PIN number associated with some telephone or internet usage time purchased. With no further explanation, the district court concluded that "as a matter of law, none of the cards dispensed by the Accused Devices is a "collector card," within the meaning of that term as construed by the Court." Thus, the district court may have been basing its summary judgment on the grounds that because the Accused Machines dispensed cards containing PIN numbers they, perforce, cannot be collector cards as

defined by the court. This would be an error premised upon an erroneous claim construction for the reasons previously discussed. But for that error, summary judgment would have been inappropriate because there existed disputed issues of material fact concerning whether the cards dispensed by the Accused Devices were "collector cards."

Coleman's argument and identification of undisputed facts in the renewed motion for summary judgment were premised upon a reading of the district court's definition of "collector card" that was unduly narrow construction of the term, but which the district court may have applied despite the apparent meaning of the language of the court's own claim construction. As a consequence, the district court found that even the cards dispensed by Heflin's own FREESPIN ® Machines, which machines Coleman distributed and operated without a license, are not "collector cards." (A278-84, 292, 296). The district court made this finding even though the FREESPIN® Machines were shown to the district court to dispense "Collectors Series" cards (A292, 296, 863, 867-68). Even Coleman's expert witness acknowledged that the cards dispensed by the FREESPIN® Machines were collectibles. (A872, page 90, lines 12-15).

Had the district court adhered to the meaning of "collector card" as stated in and reasonably understood from its *Markman* Order, the trier of fact (which, in this case was to be a jury), after hearing the testimony of the witnesses, including the parties' experts, could have found that the cards dispensed by the Accused Telephone Machine, the Accused Internet Machine (*i.e.*, the Coleman Machines) and/or the unlicensed FREESPIN® Machines were "collector cards because at the time they were dispensed by the machines "some intrinsic value to the purchaser as a collector of that type of card or that type of picture or text which appears on the face of the card."

31

Coleman's renewed motion for summary judgment asserted as an undisputed material fact that those "cards" dispensed by the Accused Machines "receive[d] value from an external source, such as an account linked to the card by a PIN number." (A774-78, #s 9,18,28). Coleman, however, did not assert as an undisputed fact or offer evidence to support an assertion that those cards did not have any other intrinsic value. Rather, an additional asserted undisputed fact by Coleman simply declared that those cards were not "collector cards" as that term has been interpreted by the Court." (A774-78, #s 10,19,29). In doing so, Coleman was simply substituting their argument for what should have been a fact determination made by the jury. Had the district court properly construed the claim term, the presence of *another* element of card value, in addition to an intrinsic value to a purchaser as a collector, would not have disqualified those cards as "collector cards," and the jury could have taken that into consideration in resolving that issue of fact.

Additionally, the term "intrinsic value," which the district court used in both its explicit definition of the claim term and in the Summary Judgment Order, has a particular meaning to those of ordinary skill in the collector card industry, as explained by Heflin's expert witness in his opposition to Coleman's initial motion for summary judgment. (A313, ¶ 45). That determination as to whether a card had the requisite intrinsic value also presented a fact issue which should have been put to the jury.

**B.    The District Court Erred in Granting Summary Judgment Because Disputed Issues of Material Fact Existed**

Even assuming that the district court did not apply a construction of the term "collector card" that included a *per se* exclusion of cards containing PIN numbers or otherwise receiving

32

some of their value from an external source, the district court should not have granted summary judgment of non-infringement to Coleman. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In light of Coleman's considerable burden and the inferences to which Heflin was entitled as the nonmovant, the numerous disputed fact issues described previously precluded entry of summary judgment.

If the district court did not apply a construction of the term "collector card" that *per se* excluded any card that received any of its value from some external source, the district court could only have reached the conclusion that Coleman was entitled to summary judgment of non-infringement by making the fact determination that the cards dispensed by the Accused Machines were not collector cards because they had no intrinsic value to a purchaser as a collector. Stated in the obverse, the district court would have had to make the fact determination that the cards dispensed by the Accused Machines only received their value from the external source, which was the prepaid telephone or internet service associated with the PIN number on the cards.

As explained earlier in this brief, those material facts were neither asserted nor established by Coleman to be undisputed. Heflin's expert, Mr. Berkus, stood ready to tell the jury what he had told the district court in the claim construction proceedings, including:

> The past 15-20 years has added phone cards to the industry of collector cards in America. (A308, ¶ 31);
>
> The collector card category is large and contains many varieties of collectible subject matter. (A309, ¶ 34);
>
> The information on a collector card may include data, PIN numbers, history, images, cartoons, characters, or a photo. (A310, ¶ 35); and

33

> Collector cards are basically a major category that includes smaller groupings such as trading cards, postcards, autographs, playing cards, phone cards, money cards, credit cards, checks, vouchers, sporting event passes, tickets, ATM cards, and a host of other items that would fall into the category because of content, size, detail, materials, or just plain collector interest. Collectible cards are distributed in all formats. (A310, ¶ 36).

This type of evidence would have informed the jury's determination as to whether the cards met the definition of the claim as construed by the court. If the district court made those fact determinations, based on the evidence before it, it clearly usurped the role of the jury as the finder of fact.

This Court's opinion in *Dorel Juvenile Group, Inc. v. Graco Children's Products, Inc.*, 429 F.3d 1043, 1047 (Fed. Cir. 2005) is particularly instructive. The district court's error in that case is analogous to the district court's error here.   In *Dorel* this Court reiterated that the application of the meaning adopted by the court is a fact-intensive process, even where there is no dispute as to the structure and operation of the accused device. *Id.* at 1047.

In *Dorel*, the district court construed the claim, then applied it and entered summary judgment of non-infringement. The claim language at issue concerned a seat and a base removably secured or removably attached to one another. The product was a child's car seat having a bottom structure and a top structure attached by screws such that separating the pieces would require a screwdriver. This Court agreed with the district court's claim construction of the key claim terms, but found that the court had inappropriately invaded the province of the finder of fact in entering summary judgment of non-infringement. *Id.*

This Court in *Dorel* took issue with the district court's conclusion that the accused device cannot infringe as a matter of law, stating: "reasonable minds can differ after all as to whether

34

the top and bottom structures of the Graco products are in fact the claimed seat and base of the asserted patents...." *Id.* Finding that the district court invaded the province of the finder of fact in deciding the infringement question, this Court vacated the summary judgment of non-infringement and remanded the case for a fact determination as to whether the accused device met the limitations of the asserted claims. Similarly, reasonable minds can differ as to whether any card containing a PIN number and deriving value from some external source can also have an intrinsic value to a purchaser as a collector.

Because those same disputed material fact issues delineated above remained for determination by the jury, the district court erred in granting summary judgment of non-infringement.

### C.    The District Court Erred in Granting Summary Judgment With Respect to Claims 1 Through 4 of the '874 Patent

Even under the most restrictive construction of the term "collector card" as applied by the district court in granting the summary judgment, Coleman was not entitled to summary judgment with regard to Heflin's claim of infringement of claims 1 through 4 of the '874 Patent. Claim 1 of the '874 Patent defines a "system for *dispensing collector cards* to a user" (emphasis added), and claims 2-4 depend from claim 1. Claim 1 requires, among other limitations, a card dispensing mechanism that is controlled by a processor "to dispense *collector cards* in response to receipt of a predetermined amount of currency." (Emphasis added).

The crux of Coleman's' renewed motion for partial summary judgment argument was that the cards actually dispensed by the Accused Machines are not, as a matter of law, "collector cards." Claims 1 through 4 of the '874 Patent, as system claims, are not however limited to machines that actually dispense "collector cards." Rather, claims 1 through 4 include machines

35

that are *capable of dispensing "collector cards"* in addition to machines that actually dispensed those cards. Therefore, if any of the Accused Machines made or sold by Defendant are capable of dispensing "collector cards", whether they actually have dispensed such cards, those machines infringe at least some of the claims of the '874 Patent.

In system claims 1 through 4 of the '874 Patent, the term "collector card" is not a limitation of the claims except insofar as the system must be capable of dispensing them. Claim 1, which refers to "collector cards" for context, explicitly claims a "system." The claimed system includes a currency acceptor, a card dispensing mechanism, a processor, a display, and a promotional game sub-system. The manufacture or sale of a machine with the claimed features is an infringement even if the machine is never used to dispense anything.

In the renewed summary judgment motion Coleman did not assert or identify as an undisputed material fact that any or all of the machines in issue are not capable of dispensing "collector cards" as that term has been defined by the Court (or in any other respect). They simply asserted that it was undisputed that the actual cards that are and have been dispensed by the Accused Machines are not "collector cards."

The district court erroneously relied upon *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 49 F.3d 1551 (Fed. Cir. 1995) to reject Heflin's argument that Coleman was not entitled to summary judgment with respect to claims 1 through 4 on these grounds. While this Court in *High Tech* did find that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all limitations of a patent claim (citing *Hap Corp. v. Heyman Mfg. Co.,* 311 F.2d 839 (1st Cir. 1962)), the Court also stated "[o]f course, if a device is designed to be altered or assembled before operation, the manufacturer may be held

36

liable for infringement if the device, as altered or assembled, infringes a valid patent." *High Tech,* 49 F.3d at 1556. The latter consideration is relevant in this case.

In *High Tech*, this Court rejected the district court's finding of infringement by an accused device in which screws had to be loosened or removed to permit the accused device, a camera, to rotate in a way that it read on the patent in suit. Rather than being used as designed, sold and intended, the accused device required physical alteration to arguably infringe. The district court in *High Tech* had relied on *Intel Corp. v. U.S. Int'l Trade Commission,* 946 F.2d 821 (Fed. Cir. 1991) for the proposition that, if a device can be altered without undue difficulty to operate in an infringing manner, the device as sold must be deemed infringing. In rejecting the district court's analysis, this Court explained the proper scope of *Intel*, noting that the accused device in *Intel* was not physically altered but could be programmed to operate in a certain manner. Since the device could be programmed to operate in an infringing manner, the claim read on the accused device. *High Tech*, 49 F.3d at 1555-56.

Unlike the circumstances in *High Tech*, Heflin's argument does not require the Court to disregard a component of the Accused Devices that would have to be physically altered to make the devices infringe the system claims, but simply to acknowledge that the jury could find that the inherent capability of the Accused Devices as designed, manufactured and/or sold  by Coleman make it capable of dispensing a "collector card" as that term is properly construed.

Whether the Accused Machines are capable of dispensing a card that meets the Court's definition of "collector card" is a fact issue not addressed by the district court or Coleman. The parties and the Court might all agree that a traditional baseball card is a "collector card." (A451). Consequently, should Heflin introduce evidence to the jury that the FREESPIN® Machines, which dispense preprinted cards, are capable of dispensing baseball cards, the jury could

reasonably determine, and indeed should determine, that Coleman's unlicensed manufacture, sale or distribution of the FREESPIN® Machines infringed some or all of the system claims, 1 through 4, of the '874 Patent. Similarly, should Heflin show that the other Accused Machines are capable of dispensing a "collector card" then those machines, too, could be found by the jury to infringe the system claims of the '847 Patent.

The district court's supplemental justification for rejecting Heflin's argument regarding claims 1 through 4 of the '874 Patent is unavailing. First, the district court observed that Heflin has not "put forth any evidence that Defendants intended to use the Accused devices to distribute "collector card" or that any of the Accused devices has ever distributed anything other than paper receipts." (A11). This suggests, however, that the district court was erroneously shifting the burden in the summary judgment context from Coleman to show that there were no undisputed material facts concerning this issue to Heflin to rebut fact issues neither established or asserted by Coleman.

Second, the district court was simply mistaken in saying that Heflin had never put forth any evidence that the Accused Machines ever distributed anything other than paper receipts. (A11). Heflin had submitted declarations and exhibits to the district court that clearly showed that the FREESPIN® Machines dispensed preprinted "Collector Series" cards. (A278-84, 292, 296). This also suggested that the district court again inappropriately shifted the burden to Heflin to provide evidence on a fact issue that Coleman had not established or asserted as an undisputed fact.

Further, even though the words of the claims define the scope of the patented invention, *see, e.g., Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996), the district court relied on the statement of the Examiner in the Notice of Allowance to inappropriately read

38

a limitation into the system claims 1 through 4. The district court noted that the Examiner stated in the Notice of Allowance that the reasons for allowing the patent were that the "patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of a collector card." (A12). This statement, the district court concluded, limited those claims to the actual distribution of collector cards. The patent claims allowed by that Examiner, however, clearly entitled Heflin to exclude others from manufacturing or selling, in addition to actually using, the promotional game system he invented. *See* 35 U.S.C. §271(a).

Finally, the district court expressed concern that by crediting Heflin's position on claims 1 through 4 it "would have to find that the pre-existing Rademacher Patent… infringes" the '874 Patent (A11), and would allow the '874 Patent "to cover nearly any device capable of dispensing a card depicting text or graphics." (A12). These stated concerns are misplaced and reflected the district court's profound misunderstanding of the '847 Patent. The court could only harbor such concerns by totally disregarding that the '874 Patent required that a promotional game be awarded for the purchase of the "collector card"-- a limitation that the Rademacher Patent did not have.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant D. Keith Heflin respectfully requests that the Court reverse the district court's summary judgment that Defendant-Appellees Gary R. Coleman Jr. and Coleman Music and Entertainment LLC did not as a matter of law infringe U.S. Patent No, 6,213,874, and that the Court further direct that the construction of the claim term "collector card" does not *per se* exclude any item solely because it receives some value from an external source, such as an account linked to the card by a PIN number.

Respectfully submitted,


By: ___/s/ John F. Triggs_____
 John F. Triggs (BPR 26718)
 Mark J. Patterson (BPR 007186)
 Paul Ney (BPR011625)
 Waddey & Patterson, P.C.
 Suite 500 Roundabout Plaza
 1600 Division Street
 Nashville TN 37203
 Tel. No.: (615) 242-2400
 jft@iplawgroup.com
 mjp@iplawgroup.com
 pcn@iplawgroup.com

*Attorneys for Plaintiff-Appellant, D. Keith
Heflin*

# ADDENDUM

**Final Judgment**

**Summary Judgment Opinion and Order**

***Markman* Opinion and Order**

**US Patent No. 6,213,874**

# UNITED STATES DISTRIC COURT

EASTERN        DISTRICT OF       VIRGINIA
NORFOLK DIVISION

**D. Keith Heflin,**
        Plaintiff,

v.

                        Civil Action No. 2:10cv566

**Coleman Music and Entertainment, L.L.C.**
        Defendant,

## JUDGMENT IN A CIVIL CASE

[ ]    **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[X]    **Decision by Court.** This action came on for decision before the Court. The issues have been decided and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** Defendants' Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Summary Judgment on Count One of Defendants' Counterclaim is GRANTED; and Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim Count Two is GRANTED.

    December 5, 2011          FERNANDO GALINDO, CLERK
Date

                      By:      /s/
                             Lara Dabbene, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

DEC 5 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

D. KEITH HEFLIN,

    Plaintiff,

v.                                     Civil Action No2:10cv566

COLEMAN MUSIC AND
ENTERTAINMENT, L.L.C.,

    Defendants.

## OPINION AND ORDER

This case involves an action for patent infringement relating to Plaintiff D. Keith Heflin's ("Plaintiff") patent for a "collector card" dispensing system with a promotional free game feature. The patent is entitled "Collector Card/Phone Card Dispensing System With Promotional Free Spin/Free Draw Game Feature" and was issued on April 10, 2001, as United States Patent No. 6,213,874 B1 ("the '874 Patent").[1] Plaintiff alleges that Defendants Gary B. Coleman and Coleman Music and Entertainment, L.L.C., (collectively, "Defendants") "ha[ve] been making, or have made, products that infringe at least one claim of the '874 Patent" and that Defendants will continue to infringe on its patent unless this Court grants the requested relief. (Pl.'s Second Am. Compl. 3.)

Presently before the Court is Defendants' Renewed Motion for Summary Judgment, filed October 25, 2011, and Plaintiff's Motion for Summary Judgment on Defendants' Amended Counterclaims, filed November 14, 2011.

---

[1] In its Second Amended Complaint, Plaintiff incorrectly states that the patent was issued on August 10, 2001. (Pl.'s Second Am. Compl. 3.) The patent issued by the United States Patent Office lists April 10, 2001, as the date on which the '874 Patent was issued.

## I.    FACTUAL AND PROCEDURAL HISTORY

On September 9, 1997, Plaintiff filed Application Serial No. 08/925,860 for a "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature." The Abstract of the Application described the invention as follows:

> A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer. As a promotion to encourage the sales of the collector's cards, the system includes a game sub-system that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased. (Def.'s Opening Claim Constr. Brief 2.)

On September 20, 1999, the Patent and Trademark Office ("PTO") rejected all claims in the Application on the grounds that they were "obvious" over U.S. Patent No. 5,674, 128 to Holch ("Holch Patent") and U.S. Patent No. 5,868,236 to Rademacher ("Rademacher Patent"). (Id. at 3.)   Specifically, the Examiner found that "[i]t would be obvious to combine the inventions of Holch and Rademacher in order to have a game card vending station that produced collector cards with a monetary value that is able to be recognized by a gaming machine using a bar code, magnetic strip or PIN or other well known in the art card reading technology in order to play a promotional game." (Id. at 6 (citing Prosecution History, at CM-01489-90).

In the invention covered by the Holch Patent, a player establishes an account at a customer service station and receives a magnetic I.D. card, for which he may select a PIN to use to access his account. The player deposits money into his account and can then swipe his card at a game terminal to play the desired game. Based on the results of the game, the player's account is credited and debited on his magnetic I.D. card. The player can obtain his or her winnings by presenting the card to the cashier. (Id. at 4 (citing Holch Patent, 5:43-8:6)).   The Rademacher Patent covers a "station" consisting of a payment acceptor and a card dispenser for dispensing

prepaid long distance telephone cards to the customer. Once the customer deposits his payment into the acceptor and selects the desired amount of long distance service, the station dispenses a telephone card and a separate slip with an activated PIN and the selected amount of long distance service printed on it. (Id. at 4 (citing Rademacher Patent, 2:33-64).

On June 24, 2000, Plaintiff submitted to the Examiner a statement consisting of four arguments as to why his Patent Application should be granted in spite of the Holch and Rademacher Patents. The first and second arguments distinguished Plaintiff's invention from the Holch Patent on the grounds that the machines in Holch did not accept currency and, in Holch, the player places money on an account balance associated with the card. Plaintiff's third argument attempted to distinguish Plaintiff's invention from Rademacher on the grounds that the system disclosed in Rademacher did not dispense collector cards. Specifically, Plaintiff stated:

> In contrast to the present invention, Rademacher specifically describes that the preferred "cards are no-value cards" and that a label can be adhered to the no-value card. This use of an adhered label would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectable cards of the present invention. In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number. . . Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their *inherent value* as taught by the present invention. (Id. at 6 (citing Prosecution History, at CM-01498) (emphasis added).)

Plaintiff's final argument was that neither Holch nor Rademacher "suggests the combination of a card dispenser with a gaming device for collector cards." (Id. at 6 (citing Prosecution History, at CM-01498).) To this end, Plaintiff stated, "This directly teaches away from the value of the collectable cards of the present invention where the user is paying money for the value of the card being dispensed from the machine." (Id. at 6-7.) Based on Plaintiff's arguments, the Examiner issued a notice of allowance of all claims in the Application, stating

"[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." (Id. at 7.)

Wherefore, on April 10, 2001, the PTO issued U.S. Patent No. 6, 213, 874 B1 ("the '874 Patent), which is the subject of the instant dispute. The '874 Patent contains nine patent claims that protect systems and methods for dispensing a collector card/phone card with promotion free spin/free game feature. (Pl.'s Init. Br. On Claim Constr. 1.)

On November 18, 2010, Plaintiff filed suit against Coleman Music and Entertainment, Inc., and Gary B. Coleman Jr., alleging infringement of the '874 patent." On December 12, 2010, Plaintiff filed a First Amended Complaint adding Supreme Petroleum, Inc., as a defendant. Plaintiff filed a Second Amended Complaint on January 19, 2011 adding Defendant Slip-In Food Marts, Inc., as a defendant. Plaintiff's Second Amended Complaint alleges a single count of patent infringement and asserts, among other things, that defendant Coleman Music, at the direction of defendant Coleman, sold and/or licensed one or more infringing devices to both Defendants Supreme Petroleum and Slip-In Food Marts which were placed for public use at Defendants' retail locations. (2d Am. Compl. ¶¶ 7–8). On July 21, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Slip-In Food Marts, Inc., be dismissed without prejudice and that Slip-In Food Marts, Inc., be dismissed without prejudice as a party to this action. On August 3, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Supreme Petroleum, Inc., be dismissed without prejudice and that Supreme Petroleum, Inc., be dismissed without prejudice as a party to this action.

Following a Markman hearing, this Court entered an Opinion and Order, dated October 12, 2011, in which we construed the term "collector card" to mean "a card which, at the time it is dispensed, has some intrinsic value as a card to the purchaser as a collector of that type of card or that type of picture or text which appears on the face of that card." (Opinion and Order, at 9.) We further held that the term "collector card" must be interpreted as "excluding coverage of cards that have no intrinsic value or which receive their value from some external source, such as an account linked to the card by a pin number." (Id. at 8.)

In their Motion for Summary Judgment, Defendants allege that, based on this Court's construction of the term "collector card," "*none*" of the machines accused of infringement in this case can infringe [the '874 Patent] as a matter of law." (Def.'s Mem. in Supp. of Mot. Summ. J. 1-2.) Also before the Court are Defendants' two remaining Counterclaims against Plaintiff: Tortious Interference (Count I) and False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Id. at 323–24.

In reviewing a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court construes all facts and inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007) (citing United States v. Diebold, Inc., 369 U.S. 564, 655 (1962); Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Indeed, the moving party bears the

initial burden of showing "the absence of an essential element of the nonmoving party's case and that it is entitled to judgment as a matter of law." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). Once the moving party satisfies this burden, the nonmoving party then must recite specific facts showing that there is a genuine dispute of fact which merits a trial. Id. (citing Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Summary judgment "will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." Honor, 383 F.3d at 185.

In patent cases, "[s]ummary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005). As this Court has held, "[c]onclusory statements regarding equivalence do not raise a genuine issue of material fact." American Piledriving Equip., Inc. v. Geoquip, Inc., 696 F. Supp.2d 582, 586-87 (E.D.Va. 2010) (citing PC Connector, 406 F.3d at 1364).

## III.   ANALYSIS

### A. Defendants' Renewed Motion for Summary Judgment

In his Second Amended Complaint, Plaintiff alleges a single count of Patent Infringement against Defendants. To prove patent infringement, "a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011). A plaintiff can satisfy this burden by showing that the accused device embodies every limitation in the claim either literally or by a substantial equivalent. Geoquip, 696 F. Supp.2d at 586-87. This requires the plaintiff to "compare the alleged infringing device to the properly construed claims to determine if all the

claim limitations are met." Fred Hutchinson Cancer Research Center v. BioPet Vet Lab, Inc., 768 F.Supp.2d 872, 875 (E.D.Va. 2011) (citing Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1351 (Fed. Cir. 2001)).

"Literal infringement occurs when every limitation recited in the claim is found in the accused device so that the claims read on the device exactly." Geoquip, 696 F.Supp.2d at 587. "If even one limitation is missing or is not met as claimed, there is no literal infringement." Elkay Mfg. Co. v. EBCO Mfg. Co., 192 F.3d 973, 980 (Fed. Cir. 1999). If Plaintiff cannot show literal infringement, he may still establish infringement "by showing that the accused device contains elements that are equivalent to those claim limitations that are not literally present in the device. Geoquip, 696 F. Supp.2d at 587 (citing Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999). This doctrine of equivalents is "limited," and is applied to each individual claim limitation, rather than to the invention in its entirety. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1367 (Fed. Cir. 1999).

The '874 Patent contains two independent claims. Claim 1 provides as follows:

A system for dispensing collector cards to a user comprising:

    a. a currency acceptor;

    b. a card dispensing mechanism;

    c. a processor operatively connected to the currency acceptor and to the card dispensing mechanism whereby a signal is sent to the card dispensing mechanism by the processor to dispense the collector cards in response to receipt of a pre-determined amount of currency at the currency acceptor;

    d. a display and user control panel each operatively connected to the processor, and;

    e. the processor including a promotional game subsystem, the game sub-system generating information at the display and receiving information from the user

control panel whereby the user can play an electronic promotional game in response to and conditioned on the purchase of the collector cards.

Independent Claim 5 sets forth the claim as a method rather than a system:

A method of dispensing collector cards from a collector card dispensing system to a collector comprising the steps of:

a. accepting currency from the collector at an electromechanical currency acceptor associated with the system;

b. processing in the system currency received signals from the currency acceptor;

c. automatically dispensing the collector cards from a card dispensing mechanism associated with the system when the currency received signals processed reach a predetermined level;

d. providing the collector an option to immediately play an electronic promotional game associated with the system as a reward for purchasing the collector cards.

In our October 12, 2011 Order, we expressly held that the '874 Patent did not cover cards that have "no intrinsic value" and "which receive their value from some external source, such as an account linked to the card by a PIN number." The Accused Telephone Machine and the Accused Internet Machine both dispense paper receipts containing information, including a PIN number that the purchaser can use to make a phone call or to connect to the Internet. Similarly, the phone cards dispensed by the FreeSpin machines contain a telephone number, PIN number, and information about the amount of telephone time purchased. Thus, as a matter of law, none of the cards dispensed by the Accused Devices is a "collector card," within the meaning of that term as construed by this Court.

Nonetheless, Plaintiff urges that Claims 1 through 4 of the '874 Patent cover not only those devices that actually dispense "collector cards," but also those which are *capable of dispensing 'collector cards.'"* (Pl.'s Mem. in Opp. to Mot. Summ. J. 9 (emphasis in original)). In support of this argument, Plaintiff argues that Claim 1, along with Claims 2, 3, and 4, claims a "system," and that the term "collector card" is not a limitation of the claims except insofar as the system must be capable of dispensing them. Thus, according to Plaintiff, the manufacture or sale of a device "with the claimed features is an infringement [of Claims 1 through 4 of the '874 Patent] even if the machine is never used to dispense anything." (Id. at 9.)

However, the Federal Circuit has expressly disclaimed this logic. See High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551 (Fed. Cir. 1995). In High Tech, the patentee claimed a patent on a hand-held endoscope for use in dental work. The claims of the patent required the endoscope to have a camera that was "rotatably coupled to said body member." The accused device was fixed to its housing with two set screws, but if the screws were loosened, the accused device could become "rotatable." The district court determined that because the device could be rotated if its screws were loosened, it was *cap*able of being rotated and therefore infringed the patented device. Id. at 1553.

On appeal, the Federal Circuit reversed, noting that "a device does not infringe simply because it is possible to alter it in a way that would satisfy all limitations of a patent claim." Id. at 1555 (citing Hap Corp. v. Heyman Mfg. Co., 311 F.2d 839, 843 (1st Cir. 1962) ("The question is not what [a device] might have been made to do, but what it was intended to do and did so . . . that a device could have been made to do something else does not of itself establish infringement."). Here, as in High Tech, the fact that the Accused Devices might be capable of dispensing "collector cards" is "not enough, by itself, to justify a finding that the manufacture

and sale of [the Accused Devices] infringe [Plaintiff's] patent rights." High Tech, 49 F.3d at 1556. This capability must also be coupled with intent on the part of Defendants to use the Accused Devices for the purpose of distributing collector cards. Id. (noting the district court's error in failing to consider whether the defendant "intended or anticipated that dentists would remove the set screws and render the [accused device] "rotatably coupled" during normal operation, or whether any dentist had actually operated the [accused device] in that fashion.").

Here, Plaintiff has not shown that any of the Accused Devices is even capable of distributing "collector cards." Although each device has a paper printer, they do not have card dispensing mechanisms as such. Nor has Plaintiff put forth any evidence that Defendants intended to use the Accused Devices to distribute "collector cards" or that any of the Accused Devices has ever distributed anything other than paper receipts.

Moreover, if, as Plaintiff contends, the term "collector card" is not a true limitation on Claims 1 through 4, Plaintiff's patent becomes virtually indistinguishable from the Rademacher Patent. Indeed, the Rademacher Patent expressly states, "It should be understood that many items other than phone cards can be dispensed in this arrangement, for example, lottery tickets or cards; bus, train, or subway tickets; postage, etc." (Rademacher Patent, 6:30-33.) The devices covered by the Rademacher Patent thus appear capable of dispensing "collector cards." Were we to accept Plaintiff's argument, it seems we would have to find that the pre-existing Rademacher Patent, from which Plaintiff so clearly attempted to distinguish his design during the patent prosecution, infringes Plaintiff's patent.

However, as we noted in our Markman Order, during the prosecution history, Plaintiff repeatedly emphasized that what made his proposed patent unique was the fact that it distributed

"collector cards," not the fact that it was capable of distributing a "collector card." (Prosecution History, at CM-01498.) Indeed, as stated *supra*, Plaintiff argued before the Patent Examiner as follows:

> In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number. . . Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their *inherent value* as taught by the present invention.

Plaintiff cannot now disavow this argument in order to survive summary judgment. American Piledriving Equip., Inc. v. Geoquip, Inc., 675 F.Supp.2d 605, 6-7 (E.D.Va. 2009) (when an applicant clearly disclaims the scope of his patent in distinguishing his claim from prior art, the patent must be construed to exclude that which the applicant disclaimed); Computer Docking Station Corp v. Dell, Inc., 519 F.3d 1366 (Fed. Cir. 2008) (same). Moreover, in the Patent Examiner's Notice of Allowance, the Examiner stated that the reasons for allowing Plaintiff's patent were that "[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." We thus find that unless the Accused Devices actually distribute "collector cards," they do not infringe the '874 Patent. To hold otherwise would allow Plaintiff's Patent to cover nearly any device capable of dispensing a card depicting text or graphics. Such a result is simply untenable.

Finally, as Plaintiff concedes, Claims 5 through 9 of the '874 Patent describe a method practiced by a "collector card" dispensing system, meaning that a "collector card" must actually be dispensed by the Accused Devices for this Court to find that such devices have infringed the '874 Patent. Because we find as a matter of law that the Accused Devices do not dispense "collector cards," Defendants' Motion for Summary Judgment is **GRANTED**.

**B. *Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims I and II***

Also before the Court is Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims One (alleging Tortious Interference) and Two (alleging False Advertising).

1. Tortious Interference

Count One of Defendants' Amended Counterclaim alleges that Plaintiff Heflin and WOG tortiously interfered with (i) a contractual relationship between Coleman Music and TA Travel Centers of America ("TA") and (ii) business expectancies that Coleman Music had with Frank's Trucking Center, All American Plazas, Inc., and other potential customers. (Def.'s Am. Counterclaim at 17-18.) However, in both the Final Pretrial Order and Defendants' Brief in Reply to Plaintiff's Opposition to Defendants' Counterclaims, Defendants identify tortious interference claims against Plaintiff Heflin and WOG with respect to Defendants' alleged contractual relationships with Slip-In Food Marts, Inc. ("Slip-In"), and Supreme Petroleum, Inc. ("Supreme"). Although Defendants failed to assert their claims regarding Plaintiff's alleged tortious interference with respect to Supreme and Slip-In in their Amended Counterclaim, we will address those claims here in an attempt to dispose of this matter as efficiently as possible.

Plaintiff is a resident of Tennessee, whereas Defendants' citizenship lies in Florida. Therefore, this is a multistate tort action and Virginia's choice of law rules apply. See Milton v. IIT Research Inst., 138 F.3d 519, 521 (4th Cir. 1998); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). It is well settled in Virginia that in resolving conflicts of laws, "the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong." McMillan v. McMillan, 219 Va. 1127, 1128 (1979). With respect to Defendants' business relationship with TA, the alleged wrongful act was the letter sent by counsel for Plaintiff and

WOG to a TA location in Florida and the business relationship that allegedly was terminated thereafter concerned the placement of Coleman Music machines at several TA locations in Florida. Therefore, the appropriate law to apply to Defendants' tortious interference claim with respect to TA is the law of the state of Florida. With respect to Defendants' tortious interference claims regarding Slip-In, Supreme, Frank's Trucking Center, Inc., and All American Travel Plaza, Inc., the business relationships and expectancies which Defendants claim were based upon the placement of Coleman Music machines in Virginia. Therefore, Virginia law applies to Defendants' tortious interference claims regarding Slip-In, Supreme, Frank's Trucking Center, Inc., and All American Travel Plaza, Inc..

We note at the outset that the elements of tortious interference are virtually identical under the laws of Florida and Virginia. To succeed on a claim of tortious interference in either state, a claimant must show that: (i) there was a business relationship or expectancy, with a probability of future economic benefit to plaintiff, (ii) defendant had knowledge of that relationship or expectancy, (iii) there is reasonable certainty that absent the defendant's intentional misconduct, the plaintiff would have continued the relationship or realized the expectancy, and (iv) damage to the plaintiff. Buffalo Wings Factory, Inc. v. Mohd, 622 F.Supp.2d 325, 336 (E.D.Va. 2007) (citing Commercial Bus. Sys., Inc. v. Halifax Corp., 253 Va. 292 (1997); Salit v. Ruden, Mclosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 385 (Fla. 4th DCA 1999).

As we have already noted, Defendants contend that in November and December 2010, they had valid contractual relationships with TA, Slip-In, and Supreme, and that they had reasonable business expectancies with Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers. Defendants further state that Plaintiff Heflin and World of Games

("WOG"), of whom Plaintiff is the president and majority shareholder, knew of these existing contracts and business expectancies. Defendants claim that Plaintiff Heflin and WOG made false statements that the Coleman Game Machines infringe the '874 Patent to TA, Slip-In, and Supreme, and that Plaintiff made similar statements to Frank's Trucking Center, All American Plazas, Inc., and other potential customers through telephone calls and emails with these individuals. Defendants allege that these statements were intended to induce TA, Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers to terminate their contractual relationships or to refuse to do business with Defendants. Defendants further contend that TA, Slip-In, and Supreme did terminate their contractual relationships with Defendants on the basis of statements made by Plaintiff, and that Frank's Trucking Center, Inc., All American Plazas, Inc., and other potential customers refused to do business with Defendants thereupon.

Defendants have shown that their contract with TA was set forth a specified term of June 1, 2008, through November 30, 2011. Defendants have also shown that Plaintiff knew that Defendants were doing business with TA in November 2010. Moreover, because Defendants' contract with TA lists an expiration date of November 30, 2011, Defendants have shown that, absent some interference, Defendants would likely have continued their business relationship with TA until that date. Finally, as Defendants have shown that TA canceled its contract with Defendants in January 2010, Defendants have shown that they suffered damages as a result of Plaintiff's interference.

However, Defendants have failed to show any evidence of intentional misconduct by Plaintiff or WOG. Proof of intentional misconduct must meet an objective test. <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 228 (4th Cir. 2004). In this case,

Plaintiff and WOG apparently held a good faith belief that Defendants were infringing Plaintiff's Patent. It was on that belief that Plaintiff and WOG issued notice to TA of the potential infringement by the Coleman Machines as a means of attempting to protect Plaintiff's patent. See Appleton v. Bondurant & Appleton, P.C., 60 Va. Cir. 208, at *19 (2005) (finding no intentional misconduct and thus no tortious interference where defendant believed he was entitled by law to take certain action which resulted in termination of plaintiff's contract). Defendants have thus failed to show that any interference by Plaintiff with Defendants' contractual relationship with TA was the result of intentional misconduct, as is required to make out a claim of tortious interference. Buffalo Wings Factory, 622 F. Supp. 2d at 336. Therefore, Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim is hereby **GRANTED** as to Count One with respect to Defendants' contract with TA.

Defendant admits that its contractual relationships with Slip-In and Supreme were at-will in nature. To prevail on a tortious interference claim involving an at-will contract under Virginia law, a claimant must prove, in addition to the factors enumerated in Buffalo Wings Factory, that Plaintiff interfered through the use of improper methods. See Duggin v. Adams, 234 Va. 221, 226-27 (1987) (where a contract is terminable at will, a plaintiff alleging intentional interference with contract must also prove that the defendant interfered with the contract by employing improper methods). "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." Duggin, 234 Va. at 227. This may include "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." Id. at 228. Sharp dealing, overreaching, and unfair competition may also

constitute improper methods. <u>Id.</u> A plaintiff claiming intentional interference with a contract need not allege and prove all elements of liability for the independent tort which underlies his claim as to use of an improper method. <u>Top Svc. Body Shop v. Allstate Ins. Co.</u>, 283 Or. 201, 210 n. 11 (1978).

Defendants claim that Plaintiff's filing of the lawsuit was done in bad faith, and that this constitutes an "improper method." We disagree. A patentee is authorized by law to notify potential infringers that they may be infringing a patent unless the patentee knows that such infringement claims are false and objectively baseless. <u>See G.P. Industries, Inc. v. Eran Industries, Inc.</u>, 500 F.3d 1369 (Fed. Cir. 2007). Although we have ultimately found that Plaintiff's infringement claims were meritless, we cannot say that, at the time he filed the suit, Plaintiff knew that his claims were false, or that to file such claims was an outrageous act.

Moreover, we find that the filing of a lawsuit to enforce a patent does not constitute an "improper method" unless there is bad faith and an improper purpose in bringing the suit. <u>See Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.</u>, 45 F.3d 1550, 1558 (Fed. Cir. 1995). "A purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome." <u>Id.</u> Although Defendants assert that Plaintiff acted with an improper purpose in alerting Slip-In and Supreme of potential patent infringement, Defendants allege no facts which show that Plaintiff's primary purpose in contacting Slip-In and Supreme was to harass Defendants, rather than to win a favorable judgment. Thus, even assuming that Plaintiff interfered with valid, existing contracts between Defendants and Slip-In and Supreme, Defendants have failed to plead sufficient facts showing that Plaintiff did so using improper

methods. Therefore, as to Slip-In and Supreme, Plaintiff's Motion for Summary Judgment on Defendants' Amended Counterclaim Count One is hereby **GRANTED**.

With respect to Defendants' claim that Plaintiff interfered with their future business expectancies, we find that Defendants have failed to prove that they had any business expectancy which they were reasonably certain to realize. Defendants state that in November 2010, Defendants met with Frank's Trucking Center, Inc. and All American Plazas, Inc. "to attempt to persuade them to sign lease agreements with Coleman Music to install and service Coleman Game Machines in such spaces." (Id. at 15.) Defendants contend that Plaintiff sent letters and/or emails and made telephone calls to Franks Trucking Center, Inc., All American Travel Plaza, Inc., and other potential customers stating that the Coleman Game Machines infringe the '874 Patent, and that this is why those potential customers decided not to do business with Coleman Music. However, Defendants provide no facts to support their contention that, but for Plaintiff's actions, these expectancies would have been realized.

Indeed, the mere possibility of a future business relationship is not enough to demonstrate a "business relationship or expectancy, with a probability of future economic benefit to plaintiff," as is required to make out a claim of tortious interference under Virginia law. See Commercial Bus. Sys., 484 S.E.2d at 897; Buffalo Wings Factory, 622 F.Supp.2d at 336. Rather, a claimant must establish that he or she was more likely than not to realize the business expectancy. In their Counterclaim, Defendants state only that they were attempting to persuade certain individuals and businesses to enter into business with Defendants. They plead no facts which show that these individuals or businesses were inclined to contract with Defendants, or even that they expressed any interest in doing so. Defendants have thus failed to plead a probability of future economic benefit. See Southprint, Inc. v. H3, Inc., 208 Fed. Appx. 249, 253

(4th Cir. 2006) (rejecting a vendor's tortious interference claim where the vendor had no reason to believe it had won a contract with the potential client, and thus had no objectively reasonable ground to expect imminent business with that client); American Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 227 (4th Cir. 2004) (mere proof of a plaintiff's belief and hope that a business relationship will develop or continue is inadequate). Therefore, with respect to Defendants' Tortious Interference Claims regarding its future business expectancies, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**.

### 2. False Advertising

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C.A. § 1125(a)(1)(B); PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 120 (4th Cir. 2011). Liability arises under the Lanham Act only where the contested statement or representation is "either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." PBM Products, 639 F.3d at 120 (citing C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997). Where the statement is literally false, a violation of the Lanham Act may be shown without proof of consumer deception. PMB Products, 639 F.3d at 120. However, where a plaintiff's theory is based on a claim of implied falsehood, a plaintiff must demonstrate, through extrinsic evidence, that the challenged statements have actually deceived consumers. Id. (citing Abbott Labs v. Mead Johnson & Co., 971 F.2d 6, 14 (7th Cir. 1992)).

Defendants Lanham Act claim rests on a claim that Plaintiff made statements which were literally false; i.e. that Defendants' machines infringed the '874 Patent. (Def.'s Am. Countercl. 19.) However, the statements made by Plaintiff Heflin and WOG to TA and other current and potential customers were simply that Plaintiff was investigating a claim of potential infringement by the Coleman Game Machines. Moreover, Defendants have supplied no evidence that Plaintiff Heflin's or WOG's statements were intended to mislead or confuse consumers. PBM Products, 639 F.3d at 120. Thus, Plaintiff's Motion for Summary Judgment on Count II of Defendant's Amended Counterclaim is **GRANTED**.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED**; Plaintiff's Motion for Summary Judgment on Count One of Defendants' Counterclaim is **GRANTED**; and Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim Count Two is **GRANTED**. The Clerk is **DIRECTED** to transmit a copy of this Order to all Counsel of Record.

It is so **ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge

Norfolk, Virginia
December ___, 2011



FILED

OCT 1 2 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

D. KEITH HEFLIN,
**Plaintiff,**

v.                                                    Civil Action No2:10cv566

COLEMAN MUSIC AND
ENTERTAINMENT, L.L.C.,
**Defendants.**

## OPINION AND ORDER

This case involves an action for patent infringement relating to Plaintiff D. Keith Heflin's ("Plaintiff") patent for a "collector card" dispensing system with a promotional free game feature. The patent is entitled "Collector Card/Phone Card Dispensing System With Promotional Free Spin/Free Draw Game Feature" and was issued on April 10, 2001, as United States Patent No. 6,213,874 B1 ("the '874 Patent").[1] Plaintiff alleges that Defendants Gary B. Coleman and Coleman Music and Entertainment, L.L.C., (collectively, "Defendants") "ha[ve] been making, or have made, products that infringe at least one claim of the '874 Patent" and that Defendants will continue to infringe on its patent unless this Court grants injunctive relief. (Pl.'s Second Am. Compl. 3.)

Presently before the Court is the claim construction of the term "collector card" found in the '874 patent.

## I.   FACTUAL AND PROCEDURAL HISTORY

On September 9, 1997, Plaintiff filed Application Serial No. 08/925,860 for a "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature." The Abstract of the Application described the invention as follows:

---

[1] In its Second Amended Complaint, Plaintiff incorrectly states that the patent was issued on August 10, 2001. (Pl.'s Second Am. Compl. 3.) The patent issued by the United States Patent Office lists April 10, 2001, as the date on which the '874 Patent was issued.

A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer. As a promotion to encourage the sales of the collector's cards, the system includes a game sub-system that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased. (Def.'s Opening Claim Constr. Brief 2.)

On September 20, 1999, the Patent and Trademark Office ("PTO") rejected all claims in the Application on the grounds that they were "obvious" over U.S. Patent No. 5,674, 128 to Holch ("Holch Patent") and U.S. Patent No. 5,868,236 to Rademacher ("Rademacher Patent"). (Id. at 3.) Specifically, the Examiner found that "[i]t would be obvious to combine the inventions of Holch and Rademacher in order to have a game card vending station that produced collector cards with a monetary value that is able to be recognized by a gaming machine using a bar code, magnetic strip or PIN or other well known in the art card reading technology in order to play a promotional game." (Id. at 6 (citing Prosecution History, at CM-01489-90).

In the invention covered by the Holch Patent, a player establishes an account at a customer service station and receives a magnetic I.D. card, for which he may select a PIN to use to access his account. The player deposits money into his account and can then swipe his card at a game terminal to play the desired game. Based on the results of the game, the player's account is credited and debited on his magnetic I.D. card. The player can obtain his or her winnings by presenting the card to the cashier. (Id. at 4 (citing Holch Patent, 5:43-8:6)). The Rademacher Patent covers a "station" consisting of a payment acceptor and a card dispenser for dispensing prepaid long distance telephone cards to the customer. Once the customer deposits his payment into the acceptor and selects the desired amount of long distance service, the station dispenses a telephone card and a separate slip with an activated PIN and the selected amount of long distance service printed on it. (Id. at 4 (citing Rademacher Patent, 2:33-64).

On June 24, 2000, Plaintiff submitted to the Examiner a statement consisting of four arguments as to why his Patent Application should be granted in spite of the Holch and Rademacher Patents. The first and second arguments distinguished Plaintiff's invention from the Holch Patent on the grounds that the machines in Holch did not accept currency and, in Holch, the player places money on an account balance associated with the card. Plaintiff's third argument attempted to distinguish Plaintiff's invention from Rademacher on the grounds that the system disclosed in Rademacher did not dispense collector cards. Specifically, Plaintiff stated:

> In contrast to the present invention, Rademacher specifically describes that the preferred "cards are no-value cards" and that a label can be adhered to the no-value card. This use of an adhered label would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectable cards of the present invention. In the present invention, the user is paying money for the value of the card being dispensed from the machine and not a no-value card with some other associated value accessed by a PIN number. . . Therefore, the Rademacher reference directly teaches away from the distribution of collector cards and their *inherent value* as taught by the present invention. (Id. at 6 (citing Prosecution History, at CM-01498) (emphasis added).)

Plaintiff's final argument was that neither Holch nor Rademacher "suggests the combination of a card dispenser with a gaming device for collector cards." (Id. at 6 (citing Prosecution History, at CM-01498).) To this end, Plaintiff stated, "This directly teaches away from the value of the collectable cards of the present invention where the user is paying money for the value of the card being dispensed from the machine." (Id. at 6-7.) Based on Plaintiff's arguments, the Examiner issued a notice of allowance of all claims in the Application, stating "[t]he patentable subject matter is allowing a person to play a promotional game in response to and conditioned on the purchase of collector cards." (Id. at 7.)

Wherefore, on April 10, 2001, the PTO issued U.S. Patent No. 6, 213, 874 B1 ("the '874 Patent), which is the subject of the instant dispute. The '874 Patent contains nine patent claims

that protect systems and methods for dispensing a collector card/phone card with promotion free spin/free game feature. (Pl.'s Init. Br. On Claim Constr. 1.)

On November 18, 2010, Plaintiff filed suit against Coleman Music and Entertainment, Inc., and Gary B. Coleman Jr., alleging infringement of the '874 patent." On December 12, 2010, Plaintiff filed a First Amended Complaint adding Supreme Petroleum, Inc., as a defendant. Plaintiff filed a Second Amended Complaint on January 19, 2011 adding Defendant Slip-In Food Marts, Inc., as a defendant. Plaintiff's Second Amended Complaint alleges a single count of patent infringement and asserts, among other things, that defendant Coleman Music, at the direction of defendant Coleman, sold and/or licensed one or more infringing devices to both Defendants Supreme Petroleum and Slip-In Food Marts which were placed for public use at Defendants' retail locations. (2d Am. Compl. ¶¶ 7–8). On July 21, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Slip-In Food Marts, Inc., be dismissed without prejudice and that Slip-In Food Marts, Inc., be dismissed without prejudice as a party to this action. On August 3, 2011, this Court, pursuant to an agreed dismissal order signed by the parties, ordered that the Complaint against Supreme Petroleum, Inc., be dismissed without prejudice and that Supreme Petroleum, Inc., be dismissed without prejudice as a party to this action.

Still before the Court are Plaintiff's claims against Defendants Gary Coleman and Coleman Music and Entertainment, LLC (collectively, "Defendants"). The present issue in this litigation is the claim construction of the term "collector card" found in the '874 patent. Each of the nine patent claims in the '874 Patent includes the term "collector cards." (Pl.'s Init. Br. On Claim Constr. 1.) The parties agree that the term "collector cards" is the only term that requires construction in this case. (Id.; Def.'s Opening Claim Constr. Brief 1.)

## II.   APPLICABLE LAW

Claim construction is a question of law, and thus must be decided by the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 371 (1996). The Federal Circuit has repeatedly stated that, in construing claims in a patent, each claim term should generally be given its "ordinary and customary meaning." See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). In other words, claims should be read as having "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the . . . effective filing date of the patent application." Id. This "starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." Id.

In assessing claim terms, a person of ordinary skill in the art "is deemed to read the claim terms in the context of the entire patent, including the specification and prosecution history." Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1379 (Fed. Cir. 2008). Thus, the Court must look to the totality of the circumstances to inform its interpretation of the claim terms, including "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Id. at 1373. Ordinarily, the specification is the best guide for determining the meaning of a claim term. Phillips, 415 F.3d at 1315. However, statements made by an applicant during prosecution of a patent can also influence the court's interpretation of a particular claim. Computer Docking Station, 519 F.3d at 1374 ("'[A] patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.' A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art"); Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain

their allowance and in a different way against accused infringers"). In addition, the Federal Circuit has stated that courts may look to extrinsic evidence, such as dictionaries and treatises or expert testimony, in construing a particular claim. Phillips, 415 F.3d at 1318.

### III.   ANALYSIS

The parties seem to agree that the language in the '874 Patent claims does not provide much guidance as to what constitutes a "collector card." (Def.'s Opening Claim Constr. Brief 10; Pl.'s Init. Br. On Claim Constr. 5-6.) Plaintiff relies on this failure of the claim language to define the term "collector card" to argue that the '874 Patent "does not define or apply the term in a way that excludes the articles that might look to disinterested non-collectors as a simple receipt." (Pl.'s Init. Br. On Claim Constr. 6.) Plaintiff extrapolates from this that the "primary criterion" in assessing whether something is a "collector card" is "that the article is collectible to someone – a 'collector' – which would imbue them with value to that 'collector.'" (Id.) Plaintiff thus propounds the following construction of "collector card": "a piece of paper, cardboard, plastic, or metal in a round, square, rectangular, or die cut shape, that would contain information that would make it valuable or interesting to be acquired by a collector for study, comparison, exhibition, hobby, nostalgia, or investment."[2] (Id. at 7.)

By contrast, Defendants focus on a meaning of "collector card" which conforms with the idea that to be a "collector card," the item must *be* a "collector card" when purchased. (Def.'s Opening Br. On Claim Constr. 11.) In other words, a "collector card" does not include things bought and sold for one purpose, which later happen to become a part of someone's collection at a later date. (Id.) To this end, Defendants contend that the proper definition of "collector card"

---

[2] Plaintiff derived this construction of the term from the Declaration of Michael A. Berkus, filed with this Court on February 4, 2011. Mr. Berkus is Plaintiff's Expert Witness in this case.

is "a card that has recognized value as a collectable item at the time of purchase, and excluding a card that is purchased by a customer because the card has some associated value – not as collectable – that is accessed by a PIN number that is printed on the card." (Id. at 1.)

The "totality of the prosecution history" suggests that this construction of "collector card" is more appropriate than that offered by Plaintiff. Computer Docking Station, 519 F.3d at 1373. Indeed, it seems that Plaintiff would have this Court believe that *anything* capable of being collected or dispensed from a machine is a "collector card" worthy of protection under the '874 Patent. We cannot accept such an amorphous and limitless construction of the term in issue in this case. Rather, we find that, to properly be considered a "collector card," an item must, at the time it is dispensed, have some intrinsic value to a collector of that type of item or of the kind of picture or text which appears on the face of the card. That something is capable of being collected by someone, somewhere cannot be the standard by which we measure whether or not it is a "collector card." Indeed it seems that, under the construction which Plaintiff now advocates, the player identification cards and telephone cards in the Holch and Rademacher Patents, respectively, would fall under the umbrella of "collector cards."

The specification of the '874 Patent buttresses this conclusion. First, the specification states that a primary purpose of Plaintiff's invention is to "increase interest in purchasing ["collector cards"]." '874 Patent, 1:16-19. It further states that "it is advantageous to a distributor to provide a distinguishing promotion in order to encourage adults to purchase their collector's series cards." Id. at 1:32-42. This suggests that the cards which Plaintiff describes must have some intrinsic value which makes them desirable for *purchase*, and thus that they must have recognized value as a collectable item at the time they are dispensed. In the "Background of the Invention" section of the Patent Application, Plaintiff further stated:

Collecting special collector's series cards has become increasingly popular with the general public. Such cards are used for entertainment purposes in various ways, such as exchanging them with other collectors or saving them as a memento containing special significance to the collector. . . Most new collector's cards are purchased at retail stores and specialty shops from counter stock or display stock. '874 Patent 1:24-46.

That the cards which Plaintiff describes are "used for entertainment purposes" and can be purchased by the collector as part of a series quite clearly shows that "collector cards," as intended under the '874 Patent, have value at the time they are dispensed. Moreover, during the prosecution of his patent, Plaintiff repeatedly stated, in an attempt to distinguish his invention from the Holch and Rademacher Patents, that the purpose of his invention was the sale of "collector cards" and that the card being dispensed has "inherent value." (Def.'s Opening Br. On Claim Constr. 17.)  As Plaintiff stated, "This use of an adhered label [in the Rademacher Patent] would destroy or alter the value of the collector cards dispensed by the present invention. This directly teaches away from the value of the collectable cards of the present invention." (Id. at 18.)  When an applicant so clearly disavows the scope of his patent in distinguishing his claim from prior art, the patent must be construed to exclude that which the applicant disclaimed. See American Piledriving Equip., Inc. v. Geoquip, Inc., 675 F.Supp.2d 605, 607 (E.D. Va. 2009); Computer Docking Station, 519 F.3d 1366 (Fed. Cir. 2008); Gentry Gallery, Inc. v. Berkline Corp., 134 F.3d 1473 (Fed. Cir. 1998).  Thus, the '874 Patent must be construed as excluding coverage of cards that have no intrinsic value or which receive their value from some external source, such as an account linked to the card by a PIN number.

The Supreme Court has made clear that "a patent must describe the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" Markman, 517 U.S. at 373. Indeed, "the limits of a patent must be known for the protection of the patentee, the encouragement of the inventive

genius of others and the assurance that the subject of the patent will be dedicated ultimately to the public." Id. at 390.   To adopt Plaintiff's construction of "collector card" would create a "zone of uncertainty" as to what is and what is not protected under the '874 Patent.   Indeed, according to Plaintiff's expert, it is "virtually impossible" to determine whether a particular item will become collectible.   "Only the consumer and collector can decide on what they find interesting to collect."   (Berkus Decl. ¶ 26.)   Moreover, Plaintiff's expert admits that, by his definition, "[t]he collector card category is extremely large."   (Id. at ¶ 34.)   Such a limitless construction of the term simply cannot stand.

For the reasons stated herein, we find that the term "collector card" refers to a card which, at the time it is dispensed, has some intrinsic value as a card to the purchaser as a collector of that type of card or that type of picture or text which appears on the face of that card. The Clerk is **DIRECTED** to transmit a copy of this Order to the all Counsel of Record.

**IT IS SO ORDERED**.

Norfolk, Virginia

_____/s/_____
Robert G. Doumar
Senior United States District Judge

October 12, 2011

US006213874B1

(12) **United States Patent**

Heflin

(10) Patent No.: **US 6,213,874 B1**

(45) Date of Patent: **Apr. 10, 2001**

(54) **COLLECTOR CARD/PHONE CARD DISPENSING SYSTEM WITH PROMOTIONAL FREE SPIN/FREE DRAW GAME FEATURE**

(76) Inventor: **Keith Heflin**, 439 Naron Dr., Shelbyville, TN (US) 37160

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **08/925,860**

(22) Filed: **Sep. 9, 1997**

(51) **Int. Cl.**[7] ..................................................... **A63F 9/22**

(52) **U.S. Cl.** ................................. **463/17**; 463/36; 463/4; 273/118

(58) **Field of Search** ................................. 463/16, 17–19; 273/118 A; 194/215, 217; 235/1 B, 1 R

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,807,541 | * | 4/1974 | Kortenhaus | 194/1 |
| 4,359,631 | * | 11/1982 | Lockwood et al. | 235/381 |
| 4,669,730 | * | 6/1987 | Small | 463/17 |
| 4,815,741 | * | 3/1989 | Small | 273/138 A |
| 4,882,473 | * | 11/1989 | Bergeron et al. | 463/17 |
| 4,982,346 | * | 1/1991 | Girouard et al. | 463/16 |
| 5,007,641 | * | 4/1991 | Seidman | 463/17 |
| 5,137,278 | * | 8/1992 | Schilling et al. | 273/118 A |
| 5,179,517 | * | 1/1993 | Sarbin et al. | 463/16 |
| 5,266,784 | * | 11/1993 | Trotta et al. | 235/375 |
| 5,362,051 | * | 11/1994 | Swafford, Jr. et al. | 463/16 |
| 5,411,259 | * | 5/1995 | Pearson et al. | 463/17 |
| 5,551,692 | * | 9/1996 | Pettit et al. | 463/16 |
| 5,620,079 | * | 4/1997 | Molbak | 194/217 |
| 5,674,128 | * | 10/1997 | Holch et al. | 463/42 |
| 5,743,801 | * | 4/1998 | Welander | 463/44 |
| 5,791,991 | * | 8/1998 | Small | 463/41 |
| 5,868,236 | * | 2/1999 | Rademacher | 194/217 |

* cited by examiner

*Primary Examiner*—Valencia Martin-Wallace
*Assistant Examiner*—John M Hotaling, II
(74) *Attorney, Agent, or Firm*—Waddey & Patterson; Mark J. Patterson

(57) **ABSTRACT**

A system for dispensing collector's series cards to a collector includes a currency acceptor and card dispenser controlled by a computer. As a promotion to encourage the sale of the collector's cards, the system includes a game subsystem that provides the purchaser with an opportunity to play a game of chance with the credits that the person receives with each collector's series card purchased. The purchaser may then save such credits or play them, and to the extent that a person wins, a promotional prize will be awarded.

**9 Claims, 4 Drawing Sheets**

COLLECTORS CARD DISPENSER AND PROMOTIONAL GAME FLOW CHART





*FIG. 1*



*FIG. 2*



*FIG. 3*



COLLECTORS CARD DISPENSER AND PROMOTIONAL GAME FLOW CHART

*FIG. 4*

US 6,213,874 B1

1

# COLLECTOR CARD/PHONE CARD DISPENSING SYSTEM WITH PROMOTIONAL FREE SPIN/FREE DRAW GAME FEATURE

## APPLICATION FOR UNITED STATES LETTERS PATENT

Be it known that I, Keith Heflin, a citizen of United States, residing at 439 Naron Drive, Shelbyville, Tenn. 37160; have invented a new and useful "Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature."

## BACKGROUND OF THE INVENTION

This invention relates generally to collector's series card distribution, and, in particular, to a card dispensing machine and system that includes a promotional Free Spin/Free Draw game feature used to increase interest in purchasing such cards. A distinctive feature of this system is the unique manner in which the cards are dispensed in conjunction with an opportunity to play credits obtained with the purchase of a card on an instant win game.

Collecting special collector's series cards has become increasingly popular with the general public. Such cards are used for entertainment purposes in various ways, such as exchanging them with other collectors or saving them as a memento containing special significance to the collector. Collecting these cards has grown to such a great extent that it is reported that certain distributors of collector's series cards disburse over one billion cards each year. Therefore, distributors are continuously looking for new and unusual ways to distribute the cards and to increase interest in their particular brand of cards.

Most new collector's cards are purchased at retail stores and specialty shops from counter stock or display stock. The customer selects the card or card package and then pays a clerk or cashier. Promotions are often tied into the sale, such as bubble gum, three-dimensional cards, and stickers, to increase distribution. Therefore, it is advantageous to a distributor to provide a distinguishing promotion in order to encourage adults to purchase their collector's series cards. What is needed, however, is a method of distributing collector's cards to customers that is efficient and low cost and that adds promotional value to the transaction.

## SUMMARY OF THE INVENTION

The present invention provides an automated dispenser system and method for distributing collector's series cards that includes a promotional device that offers an opportunity to play an instant win game. In accordance with one object of the invention, a dollar bill valuator accepts a bill from a collector and then a computerized card dispenser delivers a collector card to the collector in response thereto. To increase the value to the collector, the card dispensing device includes a promotional feature which confers a credit to play, for amusement, a video game simultaneously with the purchase of a collector's card. The holder of the credit can then play an instant win game in order to try to win more credits. After playing the game, the holder then has the option to save any won credits for future use in an attempt accumulate more credits, which could eventually lead to a promotional prize. At any point during the game, after the holder accumulates more points than he received for promotional play, the holder has the option to obtain a prize in exchange for the credits.

2

The operation of the system is overseen by a licensee who is able to assist in the distribution of games. The licensee is needed to enter credits into the video game system for persons with vouchers for free games, and the licensee further provides for later continuance of the game by withdrawing credits and resetting the number of credits on the machine.

A preferred embodiment of the system combines a conventional microprocessor or computer and video display monitor, operatively connected to a promotional game subsystem that provides the method for operation of the game, and an interface card which allows the card dispenser to work in conjunction with the distribution of the collectible cards and credits after the insertion of the required amount of money.

When the card dispenser is depleted of cards, two things occur. An interrupt switch is activated by the interface card to disable the system from playing until the licensee of the system places more cards in the dispenser. Concurrently, an "Out of Service" light on the cabinet is illuminated and the licensee of the system is thereby notified to replenish the system with cards.

The game is played by programming the computer with a simple game algorithm of the licensor's choice. In one embodiment of the system, first, either money is inserted and a collector's card is distributed, or a licensee provides a free credit through the promotional play switch. The user then has the option of playing the game. If the user chooses not to play, then the free games are removed and the machine is reset through a credit removal switch. If the user chooses to play, a simple algorithm for the game allows the user to play his credits.

If the user loses, the game automatically removes his played credits and asks if he wishes to play again through the purchase of another collector's series card. If the user wins, he has the option to either take or double-up. If he takes, then he has the option to either play and go through the process again, or he can choose to receive the promotional prize awarded for the amount of credits that he has accumulated. If he doubles-up, the game is played and if he wins then he has the opportunity to take the winnings or play again. If he loses, then he returns to play the remainder of his credits.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram of the card dispenser and promotional game system of the present invention.

FIG. 2 is a front side view of the system cabinet showing the control panel and display.

FIG. 3 is a side view of the system in the cabinet.

FIG. 4 is a flow chart showing the basic sequence of playing the promotional game.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawings, FIG. 1 shows the connection of the main components of the collector's card dispensing system of the present invention: a computer 10, a card dispenser apparatus 16, and a user interface/control panel 32. These components are integrated together via a wired interface 13 through a 72-pin main edge connector 22. The interface will incorporate a power supply bus and a data bus to provide for communication of electrical signals and commands to the various electronic and electromechanical devices shown on FIG. 1.

The card dispenser 16 is a conventional electromechanical machine used to distribute the collector's series cards upon

3

insertion of money into the paper currency acceptor ("PCA") **30**. The PCA **30** is conventionally used in food vending machines, and sends an electrical signal to the computer **10** to register the correct amount of currency received credits in relation to the value of the bill inserted. The computer **10** through the use of an interface card **45** then directs the card dispenser **16** to issue the cards and provides the user the opportunity to play a promotional game.

The user communicates all actions of the game through the user interface provided by the control panel **32**, as shown in FIG. **3**. The control panel **32** is a conventional interface between the user and the computer program that allows the user to play the game. The control panel **32** includes buttons to register the user's plays, and to allow the user to double-up or withdraw from the game.

In the operation of the card dispensing system **16**, the user first enters paper currency into the PCA **30** and the promotional play switch **34** is set to position "A". The PCA **30** then sends a signal to the computer **10** in relation to the value of the bill entered and registers the play credits on the service-in meter **26**.

During operation of the game, the computer **10** can generate effects to make the game more exciting. A speaker system **14** may be connected to the computer **10** to allow for sound effects or any other type of beneficial sound. Further, a revolving light **50** may be placed on top of the cabinet containing the system to be activated when a user wins, as shown in FIG. **2**.

When the user is finished, the licensee removes the credits by activating the credit removal switch **36** and the credits are removed from system memory. The system memory (not shown) is conventional RAM compatible with the computer **10**. The remaining credits would then accumulate in the out-service meter **28**. The out-service meter **28** would then provide the licensee a physical record, stating the number of credits won or unused by the user.

If the card dispenser **16** should become empty, an interrupt switch located inside the card dispenser **16** would prevent operation of the system until the card dispenser **16** is refilled. Simultaneously, an "Out of Service" lamp **40** would be illuminated, thereby notifying the licensee to replenish the card supply.

Further, the system provides for two other indicator lamps. A "Card Jam" lamp **44** notifies licensee if the dispenser becomes jammed. A "Card Dispensed" lamp **42** notifies the user that the collector's series card has been delivered into the retaining area of the cabinet **42**.

The computer **10** generates the game using a simple algorithm as part of a promotional game sub-system incorporated into the system software. The basic sequence of logical operations implemented by the software, including the promotional game subsystem, is shown on the flow chart of FIG. **4**. A person skilled in the art of computer programming could easily implement these steps in software compatible with the particular processor selected for use with the computer **10**. After the user inserts money into the PCA **30**, a corresponding currency received credit signal is sent to the computer **10** and to the interface board **45**. The interface board **45** signals the card dispenser **16** to deliver the collector cards to the user. The computer **10** then determines the available credits from either the insertion of money in the PCA **30**, at which time the promotional play switch **34** is set to position "A", or through the licensee entering credits via the promotional play switch **34** being set to position "B". The credits accumulate at that point and the user has the option of playing the promotional game.

4

The information needed to advise the user of his game playing options before and during game play is generated by the computer **10** and is displayed to the user via the monitor **12**. The user then communicates with the promotional game, the system is reset via the credit removal switch **36**, and the credits are registered in the out-service meter **28**.

If the user chooses to play the promotional game, then the computer **10** allows the user to play his credits. If the user loses, then the system is reset by the computer **10** and the system resets to offer a new card and game to the same or different user for a specified amount of money.

If the user wins, then he has the option to either quit the game or to double-up. If the user chooses not to play, then he can receive the accumulated credits and a promotional prize, or he can play again. If the user chooses to double-up, then he plays again. If he loses, the game automatically requests another amount to play. If he wins, he has the option to either take the credits or play again. If he takes the creditts, then he receives the accumulated credits that can be used to get a promotional prize awarded for the amount of credits that he has accumulated.

When the user does decide to withdraw from the game, the licensee would then activate the credit removal switch **36**, which would then signal the computer **10** to send the accumulated points into the out-service meter **28**. The user would then sign a promotional play form to receive his prize.

As a further option, a user may request a free game voucher from the licensee of the system. When the user presents the game voucher to the licensee, the licensee can enter promotional game credits for that user by means of the promotional play switch **34**, which is set to position "B".

Thus, although there have been described particular embodiments of the present invention of a new and useful Collector Card/Phone Card Dispensing System with Promotional Free Spin/Free Draw Game Feature, it is not intended that such references be construed as limitations upon the scope of this invention except as set forth in the following claims.

What is claimed is:

1. A system for dispensing collector cards to a user comprising

  a. a currency acceptor;

  b. a card dispensing mechanism;

  c. a processor operatively connected to the currency acceptor and to the card dispensing mechanism whereby a signal is sent to the card dispensing mechanism by the processor to dispense the collector cards in response to receipt of a pre-determined amount of currency at the currency acceptor;

  d. a display and user control panel each operatively connected to the processor; and

  e. the processor including a promotional game sub-system, the game sub-system generating information at the display and receiving information from the user control panel whereby the user can play an electronic promotional game in response to and conditioned on purchase of the collector cards.

2. The system of claim **1** further comprising a game credit accumulator means for electrically storing game credits available to the user for playing the electronic promotional game.

3. The system of claim **2** further comprising a game credit dispensing means for issuing to the user a physical record of game credits available to the user for future play.

4. The system of claim **3** further comprising switch means for a licensee of the system to input user game credits or delete user game credits from the system.

US 6,213,874 B1

5

**5**. A method of dispensing collector cards from a collector card dispensing system to a collector comprising the steps of:

    a. accepting currency from the collector at an electromechanical currency acceptor associated with the system;

    b. processing in the system currency received signals from the currency acceptor;

    c. automatically dispensing the collector cards from a card dispensing mechanism associated with the system when the currency received signals processed reach a predetermined level; and

    d. providing the collector an option to immediately play an electronic promotional game associated with the system as a reward for purchasing the collector cards.

6

**6**. The method of claim **5** further comprising the step of accumulating game credits in the system when the collector successfully plays the promotional game.

**7**. The method of claim **6** further comprising the step of issuing to the collector a physical record of game credits accumulated by that collector.

**8**. The method of claim **6** further comprising the step of issuing a prize to the collector in exchange for game credits accumulated by the collector.

**9**. The method of claim **6** further comprising the steps of issuing a physical record of game credits to the user and electrically entering the game credits reflected on the physical record into the system so that the user can play the promotional game.

\*   \*   \*   \*   \*

**PROOF OF SERVICE**

I hereby certify that on June 11, 2012, the foregoing Brief of Plaintiff-Appellant D. Keith Heflin was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Dale Lischer
Elizabeth G. Borland
Smith, Gambrell & Russell, LLP
Promenade Two, suite 3100
1230 Peachtree Street, N.E.
Atlanta, GA 30309-3592
404-815-3500 (Telephone)
404-815-3509 (Fax)
dlischer@sgrlaw.com
egborland@sgrlaw.com

*Attorneys for Defendants-Appellees Gary B. Coleman, Jr. and*
*Coleman Music and Entertainment, L.L.C.*

_____/s/ John F. Triggs_____
John F. Triggs

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief of Plaintiff-Appellant D. Keith Heflin contains 11,847 words as measured by the word processing software used to prepare this brief and complies with the requirements of FRAP 32(a)(7)(B).

         /s/ John F. Triggs
          John F. Triggs